BEVERLY BANK, Trustee, *et al.*, Plaintiffs-Appellants, v. THE BOARD OF REVIEW OF WILL COUNTY *et al.*, Defendants-Appellees.

Third District   No. 3—88—0557

Opinion filed September 7, 1989.—Modified on denial of rehearing February 15, 1990.

Eugene J. Schiltz, Robert E. Coleman, and Kenneth Philip Ross, all of Robert F. Coleman & Associates, Robert E. Williams, of Robert S. Atkins & Associates, and Frank S. Pollack and Bryon H. Weis, both of Pollack & Weis, all of Chicago (Robert S. Atkins, of counsel), for appellants.

Kurnik, Cipolla, Stephenson & Barasha, Ltd., of Arlington Heights (William W. Kurnik, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

This class action was brought in 1979 on behalf of the taxpayers of Will County who had paid taxes on the basis of allegedly illegal discriminatory increases in the assessed valuation of commercial and industrial real and personal property. Defendants are the County of Will and the Board of Review of Will County. Suit was originally filed in Federal court as a civil rights action under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1976)) and later was transferred to the circuit court of Will County. In 1987 a settlement of this action was approved by the circuit court of Will County, and counsel for plaintiff filed a petition seeking $1.15 million in attorney fees and costs pursuant to section 1988 of the Civil Rights Act. The trial court substantially reduced the fees requested and awarded $433,462. Petitioners have appealed.

The findings of fact contained in the written order of the trial court set forth clearly the history of this action. Since that history is essential to a review of the fees awarded, we quote those findings of fact, as follows:

"1. Petitioners, after conducting a thorough and necessary

factual and legal investigation into Will County's 1978 property tax assessments, filed in the United States District Court for the Northern District of Illinois (No. 79 C 4718), a class action complaint on behalf of the owners of commercial, industrial and personal property located in Will County. The complaint alleged that the defendants had unlawfully increased the property tax assessments of the named class representatives and the members of the plaintiff class in violation of plaintiffs' Fourteenth Amendment rights to due process and equal protection.

2. While the complaint was pending in federal court, Petitioners drafted and filed a motion for class certification and a supporting memorandum. On September 14, 1981, by agreement of the parties, the District Court certified a class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class included all taxpayers of Will County who paid real estate tax on industrial and/or commercial real estate and/or personal property tax for the tax levy year 1978.

3. In the federal court proceedings, defendants raised several arguments in summary judgment motions. Among others, petitioners had to research and respond to arguments that defendants were entitled to summary judgment because:

a. the Tax Injunction Act (28 U.S.C. Sec. 1341) barred this suit;

b. the doctrine of Burford abstention barred this suit;

c. the complaint did not state a cause of action.

4. In early 1982, this suit was transferred to this Court by stipulation after the United States Supreme Court's decision in Fair Assessment in Real Estate Ass'n. vs. McNary, 454 U.S. 100 (1981).

5. Shortley [sic] thereafter, defendants moved for judgment on the pleadings. The trial court granted defendants' motion and petitioners prosecuted plaintiffs' appeal to the Illinois Appellate Court for the Third District. While the appeal was pending, defendants filed a motion to assess their costs and attorneys' fees against plaintiffs for having filed a frivolous complaint. The Court denied this motion. The Appellate Court reversed the dismissal of the complaint, holding that it stated a cause of action under 42 U.S.C. Sec. 1983 for denial of plaintiffs' right to equal protection of the laws. *Beverly Bank, et al, v. Board of Review of Will County, et al.*, 117 Ill. App. 3d 656, 453 N.E.2d 96 (3d Dist. 1983). Petitioners then successfully opposed defendants' Petition for Leave to Appeal to the Illinois

Supreme Court and defendants' Petition for a Writ of Certiorari to the United States Supreme Court. Board of Review of Will County, et al. v. Beverly Bank, et al, 466 U.S. 951 (1984).

6. Following the case's remand to this Court in 1984, petitioners drafted, obtained approval of, and sent out a Notice of Pendency of Class Action to the members of the class and had a similar notice published in the Joliet Herald. Petitioners responded to numerous inquiries from class members, correlated the opt-out requests and filed with this Court a report on all of these matters.

7. In this Court, defendants raised various defenses to the complaint which could possibly have been the basis for a judgment in defendants' favor. Among those defenses were arguments that:

   a. at the time it applied its uniform formula to increase the assessments of commercial, industrial or personal property, the Board of Review also increased the assessments of a substantial block of residential parcels;

   b. the Board of Review's increases in the assessments of commercial, industrial and personal property were not intended to eliminate the effect of the 1.13 tentative multiplier imposed by the DLGA;

   c. the Board of Review believed that commercial, industrial and personal property was underassessed, thus the Board had a rational basis for increasing the assessments of those properties;

   d. the Board of Review and Will County are not liable for the acts of the members of the Board of Review because those acts do not constitute the 'policy' of either body;

   e. the individual members of the Board of Review are immune from liability; and

   f. as to personal property, that property was not entitled, under either state or federal law, to be accorded the same treatment for tax purposes as real property, and therefore, since all personal property entitled to be treated alike was treated alike, there was no equal protection violation.

8. Petitioners filed a motion for summary judgment supported by memoranda, which this Court ultimately denied.

9. Petitioners were in the process of preparing this case for trial when serious settlement negotiations commenced in early 1986, shortly after petitioners' motion for summary judgment was denied.

10. The parties ultimately reached a settlement in June 1986. Petitioners drafted the Settlement Agreement, and the parties' attorneys outlined it to this Court. Before any hearing on the settlement was held, however, defendants filed motions for leave to file additional affirmative defenses and for summary judgment on the basis of those affirmative defenses. After petitioners successfully opposed this motion, the Settlement Agreement was negotiated a second time. Some revision of the Settlement Agreement was necessary. The Settlement Agreement was ultimately executed and preliminarily approved by this Court on March 10, 1987. Defendants then filed a motion to vacate the settlement based on an alleged mutual mistake of fact as to the dates on which they were to make payments to the class and yet another round of settlement discussions ensued involving counsel and the Court. A new settlement was finally reached and preliminarily approved by this Court on August 27, 1987. The Court also approved new notices to the class, which petitioners caused to be mailed to the 9,554 class members and published in the Joliet Herald News, as outlined in petitioners' October 27, 1987 Report to the Court.

11. On November 17, 1987, this Court gave final approval to the settlement as fair, reasonable and adequate and in the best interests of the class, and rejected as premature a local school district's objection to paying any of the costs of the settlement.

12. The Court finds that the issues faced by petitioners in this litigation were novel and unique and that petitioners' chances of success in this litigation were uncertain during its entire pendency, from its inception until final approval of the Settlement. Specifically, the Court finds that at the time this suit was filed, there was considerable doubt whether suit could even be brought under 42 U.S.C. Sec. 1983 to challenge state tax practices, irrespective of the merits of the substantive claim. The Court finds that, having undertaken this case on a contingent basis, petitioners at all times faced a substantial risk of not receiving any compensation at all for their services in this case.

13. The settlement agreement in this case provides that class members will be paid in cash, 85% of the amount of the taxes allegedly unconstitutionally assessed against them. The Settlement Agreement resulted in the creation of a fund of approximately $3.15 million plus any costs and attorneys' fees

which the Court assesses against defendants pursuant to 42 U.S.C. Sec. 1988.

14. The recovery by the class in this case of 85% of its total claim, exclusive of attorneys fees and expenses awarded against defendants pursuant to 42 U.S.C. Sec. 1988, is a very good result and provides a substantial benefit to the class. The success achieved by petitioners in this litigation also provided the further public benefit of acting as a deterrent to taxing officials' illegally increasing assessments in the future.

15. Plaintiffs are prevailing parties within the meaning of 42 U.S.C. Sec. 1988, and are entitled to payment of their costs and reasonable attorneys fees by the defendants."

The trial court stated that it must first determine a "lode star figure," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.

Petitioners had requested a rate of $195 per hour for Robert S. Atkins and $125 per hour for Eugene J. Schiltz, the two attorneys who devoted the most time to the case. The trial court ruled that petitioners had failed to establish that the requested rates were the prevailing market rates in the community for small law firms such as theirs, and after discussing the evidence relating to rates billed by attorneys of comparable background and experience and those billed by the Atkins firm, the court determined that the rate for Atkins should be $125 per hour and the rate for Schiltz should be $95 per hour. Upon a subsequent motion to reconsider, the trial court modified its order to award Atkins a rate of $150 per hour.

Petitioners requested compensation for 2,868 hours worked by 13 different attorneys and 129 hours by paralegals and law clerks. The trial court reduced the hours to about one-half of those sought, awarding compensation for 1,546 hours by attorneys and none by nonattorneys. Two of the reductions are challenged on appeal; one, the deletion of 217 hours for Robert F. Coleman and Barry J. Freeman, senior partners of the firm of Freeman, Atkins & Coleman, Ltd., and the other the deletion of 325 hours for the firm of Pollack & Weis, tax experts. The court then further reduced the compensable hours by a 20% multiplier applied across the board. This reduction was made because of insufficient itemization of time records, according to the trial court, so that the court was not able to determine what conferences were about or what was involved in entries labelled "Re: Discovery" or "Re: Status."

The trial court refused to grant petitioners a multiplier to compensate for the delay in collection of fees and instead awarded fees at

the current market rates rather than the rates current at the time the work was done. The court did apply a multiplier of 2.5 to the lodestar amount "to account for the substantial contingent risk inherent in this case and to bring petitioners' total compensation in this case within the range of compensation normally paid attorneys for handling similar cases."

The lodestar amount to be paid by the County of Will was computed as follows:

Atkins, Gubbins, and Pollack-Weis
481.4 hours x $150 =                              $72,210
Schiltz, Ross, Freeman & Padove
1065 hours x $95 =                               101,175
Total lodestar amount                            $173,385

The court then awarded petitioners a multiplier amount to be paid out of the settlement fund as follows:

$173,385 x 2.5 - $173,385 =                      $260,077.50

On appeal petitioners seek an increase of $190,597.50 in the lodestar amount based upon allegedly erroneous reductions in both compensable hours and in the hourly rates. They do not challenge the multiplier or the allocation of the multiplier amount to be paid from the settlement fund.

### I. DETERMINING HOURLY RATES

Petitioners first contend that the trial court erred as a matter of law in reducing the hourly rates requested on the ground that small firms, such as those of petitioners, charge lower hourly rates than medium or large firms. Petitioners urge that is was also error as a matter of law to rely primarily upon the rates from a small sampling of previous hourly billings to a few clients of Atkins and Schiltz.

Section 1988 of the Civil Rights Act (42 U.S.C. §1988 (1976 ed.)) provides that in a Federal civil rights action "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The United States Supreme Court has said that a reasonable attorney fee under this statute is determined by initially calculating the number of hours reasonably expended on the litigation times a reasonable hourly rate and then making whatever adjustments may be necessary in each particular case. (*Blum v. Stenson* (1984), 465 U.S. 886, 79 L. Ed. 2d 891, 104 S. Ct. 1541.) In *Blum v. Stenson* the attorneys seeking a fee award were salaried employees of a nonprofit organization, the Legal Aid Society of New York. The Supreme Court

ruled that a cost-based standard for fee awards would not be appropriate for nonprofit legal aid attorneys but rather recognized the proper standard to be the same prevailing community rate for attorneys of like competence and experience in the same area doing similar work during the relevant period.

■ No cases have been cited to us in support of the trial court's theory that attorneys from a small firm ought to be awarded fees at a lower rate than attorneys from a larger firm solely on the basis of firm size. We consider such a theory to be violative of the prevailing community rate standard, which is based upon the skill and qualifications of the individual attorney and not upon the size of the attorney's firm. (See *Strama v. Peterson* (N.D. Ill. 1983), 561 F.Supp. 997, 998.) Illinois courts have also recognized the skill and qualifications of the attorneys as the first factor to be considered in awarding fees in a common fund case. *E.g., Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Board of Commissioners v. County of Will* (1987), 154 Ill. App. 3d 395, 506 N.E.2d 1044.

■ Just as the profit or nonprofit nature of an attorney's practice does not determine the fee award in civil rights cases, neither does the size of the law firm involved in the litigation. The appropriate standard is the market rate prevailing in the community for attorneys with the experience, skill, and qualifications of petitioners doing comparable work. Here the trial court erred in reducing petitioners' hourly rate because of the size of their firms.

■ Additionally, petitioners challenge the trial court's reliance upon nonrepresentative hourly billings of attorneys Atkins and Schiltz in determining the appropriate hourly rate for the fee award. In so doing, the trial court cited the case of *Laffey v. Northwest Airlines, Inc.* (D.C. Cir. 1984), 746 F.2d 4, where the court used the attorney's customary billing rate in fixing the hourly rate for a civil rights action fee award. The *Laffey* decision was overruled by the same court in *Save Our Cumberland Mountains, Inc. v. Hodel* (D.C. Cir. 1988), 857 F.2d 1516, four months after the order entered here. In *Save Our Cumberland Mountains, Inc. v. Hodel*, the attorneys for the prevailing parties traditionally charged reduced hourly rates for national environmental and conservation groups. Under the *Laffey* rule, these attorneys would be, in effect, penalized for past public service work by virtue of a reduced fee award in a successful class action where the hourly rate for the award is based upon past billings for hourly work in the same field. The Circuit Court of Appeals held that such a result would be contrary to the Supreme Court expression in *Blum v. Stenson* that fees should be "adequate to attract *competent* counsel," but

which should not produce windfalls to attorneys. (Emphasis in original.) (857 F.2d at 1521.) In other words, it would be hard to attract competent, qualified counsel to public interest fields if reduced rate billings would be seen as a waiver of the community market rate in computing subsequent fee awards of successful class action litigation.

■ Contrary to *Laffey*, the Seventh Circuit Court of Appeals, in *Lightfoot v. Walker* (7th Cir. 1987), 826 F.2d 516, has ruled that the prevailing attorney in a civil rights action was not limited to his historical billing rate for work done primarily in other areas of the law and in a different locality. The Court of Appeals set forth the applicable general principles as follows:

> "As the Supreme Court has stated, '[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.' *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940. Congress intended for 'plaintiffs [to] receive a reasonable fee that is "adequate to attract competent counsel," and that "counsel for prevailing parties be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended.' " ' *Gekas v. Attorney Registration and Disciplinary Commission*, 793 F.2d 846, 853 (7th Cir. 1986)." 826 F.2d at 520.

Accord, *Maldonado v. Lehman* (9th Cir. 1987), 811 F.2d 1341.

■ In the case at bar the trial court expressly based its hourly rate determination upon the evidence of "customary" rates billed by Atkins and Schiltz although the work that was billed on an hourly basis constituted a small percentage of the practice of those two attorneys. That evidence, briefly summarized, was that Atkins billed "regular clients" $125 per hour and infrequent clients $150 per hour. In addition, a witness for defendants indicated that the customary rates for small firms like his own and Atkins' were in the range of $125 to $150. Other witnesses testified that customary rates for attorneys with the experience and expertise of Atkins would be in the range of $185 to $250 per hour. The trial court stated that this latter evidence was not appropriate to consider since it was not related to the size of the law firm. Accordingly, the trial court used a rate of $150 for Atkins.

The evidence concerning Schiltz indicated that he had billed two clients at the rate of $90 per hour and two other clients at the rate of $100 per hour. On the basis of those four billings, the trial court arrived at an hourly rate of $95 for Schiltz.

We conclude that the trial court erred in relying upon previous billings of a small number of clients in determining the prevailing

market rate for petitioners.

■ Petitioners also assert as error the trial court's refusal to consider the supplemental affidavits concerning community market rates which accompanied the motion to reconsider. The decision whether to receive additional evidence at the post trial stage of the proceeding was a matter within the court's discretion. (*Elmhurst-Chicago Stone Co. v. County of Will* (1982), 109 Ill. App. 3d 1029, 441 N.E.2d 883.) We will let that ruling stand, noting, as we do so, that there is ample evidence already in the record from which a correct determination of the hourly rates can be made.

■ After carefully reviewing the record and disallowing any rate reduction because of the small size of the law firms involved, we hold that Atkins was entitled to compensation at the rate of $195 per hour and that Schiltz was entitled to compensation at the rate of $125 per hour.

In addition, petitioners' evidence clearly established that Pollack and Weis, each with 28 years' experience in real estate tax law, were entitled to the "senior litigator" rate of $195 per hour; that Gubbins (a 1975 law grad) was entitled to a rate of $160 per hour; and that Ross (a 1977 law grad) was entitled to a rate of $150 per hour. Interestingly, the trial court admitted during the hearing on petitioners' motion for reconsideration that Ross would command $150 per hour, but the court instead left his rate at $95 per hour because he was less experienced at the time he worked on this case. For the other attorneys, the trial court used current market rates in lieu of a multiplier for the delay in collection. The record discloses no basis for treating Ross differently. We accordingly hold that Pollack and Weis, Gubbins, and Ross are to be awarded fees at the rates requested.

## II. DETERMINING COMPENSABLE HOURS

■ In reducing the number of hours to be computed in the lodestar amount, the trial court eliminated 150 hours attributed to Robert F. Coleman and 67 hours attributed to Barry J. Freeman, both senior partners of Freeman, Atkins & Coleman, on the ground that the senior litigator work of these two men could have been performed by Atkins. Petitioners dispute part of the reduction on the ground that Atkins did not become involved with this case until October of 1980. Coleman sought compensation for 63.2 hours at a rate of $195 per hour and Freeman sought compensation for 63.1 hours at a rate of $175, both for work done before Atkins' involvement in the case. Since the original research was done and the complaint was drafted during 1979 and 1980, this was a crucial period of time. It seems

clear from the record that the hours spent by Coleman and Freeman prior to October 1980 were reasonable. We reverse the trial court as to the disallowance of those hours.

■■ The trial court also deleted 325 of the hours of the tax firm of Pollack & Weis which were attributed to work after the complaint was filed. The trial court ruled that there was no evidence that the expertise of Pollack & Weis was reasonably necessary after the complaint was filed. We find this determination to be without support in the record. The merits of this litigation, the discovery process, and the settlement proposals involved issues of real estate tax law which justified consultation with experts in that field. Given the complexity of this case and the success of petitioners, we conclude that expert consultation was reasonably necessary and compensable. We therefore increase the award by 325 hours at a rate of $195 per hour for Pollack & Weis.

■ The final error asserted by petitioners is the trial court's decision to reduce all compensable hours by 20% because of vagueness in the itemization, especially for conferences between attorneys. We have reviewed the work records of petitioners and find most of the entries to be sufficiently specific to indicate the subject matter of the conferences. For example, it was not unusual for cocounsel to confer concerning response to a motion, a discovery request, or a brief and then for Schiltz to list several hours of research and drafting relating to that subject, followed a few days later by a 20-minute conference with the senior litigator and cocounsel concerning the status of the case or "discovery" or an upcoming hearing. A careful survey of the time listed by petitioners discloses a subject matter listing of nearly every hour of research and conferences and, furthermore, it is possible to determine that most of the short conferences described in general terms relate to a previous matter of considerable importance. In some instances, time is listed for each of two or more attorneys who conferred together. The first listing is more detailed than the others but obviously explains the work done by all of the attorneys involved. Certainly, the fact that short follow-up conferences are less detailed than longer meetings should not, in our judgment, be fatal to petitioners' fee award request for compensation for those conferences.

Additionally, we consider the listing to be sufficiently detailed to permit the trial court to strike any specific hours which might be deemed unreasonable. We have previously held that the trial court must provide reasons to justify a particular cut in hours (*Board of Commissioners v. County of Will* (1987), 154 Ill. App. 3d 395, 506 N.E.2d 1044), and we find the reasons given here insufficient to sup-

port a flat 20% reduction in the total hours awarded. The 20% reduction was error and shall be eliminated.

In summary, we are increasing the original lodestar amount of $173,385 by $190,597.50 to a total lodestar of $363,982.50. With the addition of the 2.5 multiplier to be applied to this additional lodestar amount, petitioners are entitled to be paid $545,973.75 from the settlement fund ($285,896.25 in addition to the $260,077.50 allowed by the trial court). Thus, the total award for attorney fees is $909,956.25.

The judgment of the circuit court of Will County is reversed and remanded for entry of judgment in accordance with this opinion.

Reversed and remanded.

HEIPLE, P.J., and SCOTT, J., concur.