NICHOLAS DEMITRO, Plaintiff-Appellee, v. GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant-Appellant.

First District (1st Division)   No. 1—06—3417

Opinion filed February 9, 2009.

Timothy V. Hoffman and Heather D. Erickson, both of Chicago, for Sanchez, Daniels & Hoffman, LLP, for appellant.

Keith J. Keogh and Alexander H. Burke, both of Chicago, of Law Offices of Keith J. Keogh, Ltd., for appellee.

JUSTICE HALL delivered the opinion of the court:

Defendant-appellant General Motors Acceptance Corporation (GMAC) appeals from multiple orders of the trial court awarding plaintiff-appellee Nicholas Demitro $7,560.06 in compensatory damages, $53,101 in attorney fees, and $1,151.50 in costs, following the

court's finding that GMAC acted "unfairly" in violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2000)), when after plaintiff's vehicle was wrongfully repossessed in contravention of an agreement GMAC had with plaintiff, it recommended that the vehicle be retained unless he satisfied the total outstanding balance.

## BACKGROUND

The facts presented are taken from plaintiff's complaint, as well as from materials submitted by the parties in their cross-motions for summary judgment, and from the deposition testimonies of plaintiff and George Mietelski of GMAC.

In September 2002, plaintiff signed a retail installment contract for the purchase of a 2002 Chevrolet Suburban financed through GMAC of Orland Park, Illinois. The retail installment contract included health, accident, and disability insurance. Plaintiff was an 18-year employee of the Chicago Transit Authority. His high credit rating allowed him to qualify for zero percent financing.

Under the terms of the installment contract, plaintiff was required to make monthly payments of $734.18 on the thirteenth of the month starting on November 13, 2002. Plaintiff made his payments according to the terms of the installment contract until May 2003, when he underwent surgery to remove polyps from his colon and went on disability for approximately a month and a half.

Two checks plaintiff submitted to GMAC for the months of June and July 2003, were returned for nonsufficient funds. On August 12, 2003, plaintiff spoke with George Mietelski from GMAC who informed him that his checks had not cleared.

On August 13, 2003, plaintiff telephoned GMAC and authorized them to withdraw one month's payment amount of $742.18 from his banking account. George Mietelski then called the repossession agency and placed the repossession on hold. GMAC had previously authorized an outside agency to repossess the vehicle back on July 31, 2003.

Mietelski then sent plaintiff a "7-day extension letter" dated August 14, 2003, wherein he agreed to give plaintiff until August 21, 2003, to pay $2,202.54 to bring his account current. The letter stated as follows:

"Thank you for your recent payment; however, your account is still past due. You have until August 21, 2003 to pay the remaining amount due of $2,202.54, as well as any payments which may become due before then. If you do not pay by this date, we may exercise our rights under the law. These rights may include the right to take the vehicle from you.

If you are late again in making your payments, we may exercise

our rights without sending you another notice like this one. If you have questions, write or telephone us promptly."

Plaintiff testified that when he awoke on August 15, 2003, he discovered that his vehicle was missing from its parking space. When plaintiff contacted the police and reported his vehicle missing, he was advised to find out if the vehicle had been repossessed.

On August 15, 2003, George Mietelski discovered that plaintiff's vehicle had been wrongly repossessed. Mietelski acknowledged that the repossession was a mistake and that it violated the terms of GMAC's seven-day extension letter, but he nevertheless recommended to management that the vehicle be retained for the outstanding balance of the installment contract, based on the fact that plaintiff's account was past due and that his last two payments had been returned for nonsufficient funds. Management accepted the recommendation.

When plaintiff contacted GMAC on August 15, 2003, he was informed that sometime between the late night hours of August 14 and the early morning hours of August 15, 2003, his vehicle had been repossessed. Plaintiff demanded his vehicle back, informing George Mietelski that he had been out of work for approximately one month, that he would be filing a disability claim, and that since his vehicle was repossessed he had been unable to travel to his credit union to deposit the funds to cover his telephone payment made on August 13, 2003.

George Mietelski informed plaintiff that in order to redeem or get his vehicle back, he would have to pay off the entire outstanding balance plus repossession charges which amounted to $39,695.04. On August 19, 2003, GMAC re-presented plaintiff's telephone payment to his credit union and withdrew $742.18 from his checking account. GMAC did not credit plaintiff's GMAC account for the $742.18 and plaintiff never received that money back.

On August 20, 2003, plaintiff faxed a letter to GMAC offering to pay $2,202.54 by direct deposit that same day; this was the amount plaintiff was required to pay by August 21, 2003, as set forth in GMAC's seven-day extension letter. GMAC refused the payment offer.

Admitted into evidence was a copy of plaintiff's checking account from his credit union showing that on August 15, 2003, the amount of $4,337.58 was deposited into the account.

GMAC ultimately sold the vehicle and applied the net proceeds to the balance of the retail installment contract and held plaintiff responsible for the remainder, as well as for the costs related to the repossession and sale of the vehicle.

After hearing argument on the parties' cross-motions for summary judgment, the trial court granted judgment in favor of plaintiff

on his consumer fraud claim. The court determined that GMAC's conduct in retaining possession of the wrongfully repossessed vehicle until after plaintiff paid off the entire outstanding balance of the installment contract in contravention of the terms set forth in GMAC's seven-day extension letter amounted to an unfair practice in violation of section 2 of the Consumer Fraud Act. The court released plaintiff from any further obligations and monies due under the installment contract, including, but not limited to, the costs of repossession and sale, and any late fees and interest.

Following a bench trial specifically on the issue of damages, the trial court awarded plaintiff $7,560.06 in compensatory damages. The court later awarded plaintiff $53,101 in attorney fees, and $1,151.50 in costs under the Consumer Fraud Act.

## ANALYSIS

Summary judgement is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits, when viewed in the light most favorable to the nonmovant, reveal there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Gawryk v. Firemen's Annuity & Benefit Fund*, 356 Ill. App. 3d 38, 41, 824 N.E.2d 1102 (2005). When, as in this case, the parties file cross-motions for summary judgment, they agree that no genuine issue as to any material facts exists and that only a question of law is involved, and they invite the court to decide the issues based on the record. *Gawryk*, 356 Ill. App. 3d at 41. Our review is *de novo. Abrams v. City of Chicago*, 211 Ill. 2d 251, 258, 811 N.E.2d 670 (2004).

In addition, the standard of review applicable to a trial court's award of attorney fees pursuant to the Consumer Fraud Act is whether the court abused it's discretion. *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94, 114, 634 N.E.2d 448 (1994).

GMAC first contends the trial court erred in awarding summary judgment in favor of plaintiff, arguing that no evidence was presented that it violated the Consumer Fraud Act. We disagree.

■ To state a claim under the Consumer Fraud Act, a complaint must set forth specific facts showing: (1) a deceptive act or unfair practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 312, 662 N.E.2d 602 (1996); *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373, 695 N.E.2d 853 (1998). A plaintiff may allege that conduct is "unfair" under the Consumer Fraud Act without alleging that it was deceptive. *Saunders*,

278 Ill. App. 3d at 313; *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 853, 575 N.E.2d 1378 (1991) ("practice may be unfair without being deceptive").

Whether a defendant's conduct is unfair under the Consumer Fraud Act is determined on a case-by-case basis. *Saunders*, 278 Ill. App. 3d at 313; see also *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 290, 430 N.E.2d 1012 (1981) (effective regulation of Consumer Fraud Act requires that the term "unfair practice" remain flexible and defined on a case-by-case basis " 'in view of the futility of attempting to anticipate and enumerate all the (unfair) methods' and practices that fertile minds might devise").

■ In determining whether conduct is unfair, courts consider whether the practice offends public policy, whether it is oppressive, and whether it causes consumers substantial injury. *Saunders*, 278 Ill. App. 3d at 313; *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 421, 703 N.E.2d 518 (1998). " ' "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." ' [Citation.]" *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418, 775 N.E.2d 951 (2002).

A complaint stating a claim under the Consumer Fraud Act " 'must state with particularity and specificity the deceptive [unfair] manner of defendant's acts or practices, and the failure to make such averments requires the dismissal of the complaint.' " *Pantoja-Cahue v. Ford Motor Credit Co.*, 375 Ill. App. 3d 49, 61, 872 N.E.2d 1039 (2007), quoting *Robinson*, 201 Ill. 2d at 419. In this case, plaintiff alleges that GMAC's conduct in retaining possession of the wrongfully repossessed vehicle until after he paid off the entire outstanding balance of $39,695.04, in contravention of the terms set forth in GMAC's seven-day extension letter, amounted to oppressive conduct.

■ After reviewing these allegations, and taking them as true, we find they were sufficient to state a cause of action under the Consumer Fraud Act for oppressive conduct. Moreover, we find that the trial court did not err in granting summary judgment to plaintiff on this issue because there were no genuine issues of material fact.

On August 15, 2003, George Mietelski discovered that plaintiff's vehicle had been wrongly repossessed. Rather than return the vehicle and allow plaintiff to pay $2,202.54 and bring his account current as set forth under the terms of the seven-day extension letter, Mietelski decided to retain possession of the vehicle until plaintiff paid off the entire outstanding balance of $39,695.04.

GMAC's conduct was oppressive because it left plaintiff with only one of two options: pay the entire outstanding balance of $39,695.04

or lose his vehicle. Plaintiff suffered substantial injury because his credit rating was damaged and he ultimately lost the use of his vehicle. Moreover, after GMAC sold the vehicle and applied the net proceeds to the balance of the installment contract, it held plaintiff responsible for the remainder and for the costs related to the repossession and sale of the vehicle.

We disagree with GMAC's suggestion that its actions in breaching the terms of the seven-day extension letter merely constituted an ordinary breach of contract rather than a violation of the Consumer Fraud Act. GMAC's conduct rose to the level of consumer fraud where after plaintiff's vehicle was wrongly repossessed—GMAC prevented plaintiff from paying the $2,202.54 to bring his account current as set forth under the terms of the seven-day extension letter and instead retained possession of the vehicle until after he paid off the entire outstanding balance of $39,695.04.

This was not a simple breach of contract case since GMAC's actions sufficiently implicated consumer protection concerns. See, *e.g.*, *People ex rel. Hartigan*, 216 Ill. App. 3d at 856 (business that was in superior bargaining position committed unfair practice by using superior position and intimidation to charge and attempt to collect excessively high prices).

We also disagree with GMAC's assertion that plaintiff's actions in bouncing the telephone authorized payment of August 13, 2003, amounted to a breach of the seven-day extension letter preventing him from establishing a consumer fraud claim. The facts show that on August 15, 2003, when plaintiff informed George Mietelski that the payment would be returned for insufficient funds because he had been unable to travel to his credit union to deposit the funds in his account after his vehicle was wrongly repossessed, he still had six days to bring his account current under the terms of the seven-day extension letter which gave him until August 21, 2003, to bring the account current.

We also disagree with GMAC's contention that plaintiff's notification to George Mietelski, that the telephone payment would be returned for insufficient funds, constituted an anticipatory repudiation of the seven-day extension letter. The facts show that after giving the notification, plaintiff repeatedly assured GMAC that he intended to complete his side of the bargain. Plaintiff committed no anticipatory repudiation. See, *e.g.*, *Pope v. Economy Fire & Casualty Co.*, 335 Ill. App. 3d 41, 46, 779 N.E.2d 461 (2002) (to constitute an anticipatory repudiation, a "party's manifestation must clearly and unequivocally be that it will not render the promised performance when it becomes due"); *Leazzo v. Dunham*, 95 Ill. App. 3d 847, 849, 420 N.E.2d

851 (1981) ("An anticipatory breach occurs when a party to an executory contract manifests a definite and unequivocal intent prior to the time fixed in the contract that it will not render its performance under the contract when that time arrives").

Evidence was presented that on the same day the telephone payment was returned for nonsufficient funds (August 15, 2003), $4,337.58 was deposited into the account. GMAC effectively prevented plaintiff from meeting the terms of the seven-day extension letter when it refused to accept his offer to pay $2,202.54 by direct deposit on August 20, 2003.

Next, we reject GMAC's argument that it was entitled to possession of the vehicle and to request the outstanding balance, on the grounds that plaintiff defaulted under the installment contract and seven-day extension letter by bouncing the telephone payment. As we have previously determined, the facts show that on August 15, 2003, when plaintiff informed George Mietelski that the payment would be returned for insufficient funds, he still had six days to bring his account current under the terms of the seven-day extension letter. Therefore, plaintiff's bouncing of the telephone payment did not constitute a breach of the terms of the seven-day extension letter. Again, the undisputed facts show that GMAC prevented plaintiff from meeting the terms of the seven-day extension letter by refusing to accept his offer to pay $2,202.54 by direct deposit on August 20, 2003.

In the alternative, GMAC claims the trial court erred in awarding plaintiff attorney fees in the amount of $53,101. Under the Consumer Fraud Act, a plaintiff is entitled only to reasonable attorney fees and costs. 815 ILCS 505/10a(c) (West 2000); *Huss v. Sessler Ford, Inc.*, 343 Ill. App. 3d 835, 843, 799 N.E.2d 444 (2003).

After a plaintiff submits evidence to the trial court in support of a request for attorney fees, the court then determines whether the requested fees are reasonable in light of the evidence presented. *Huss*, 343 Ill. App. 3d at 843. The standard of review applicable to a trial court's award of attorney fees under the Consumer Fraud Act is whether the court abused its discretion. *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94, 114, 634 N.E.2d 448 (1994).

As an initial matter, we note that GMAC never requested an evidentiary hearing on plaintiff's petition for attorney fees and costs, thereby essentially conceding that the issue could be decided without a hearing. See, *e.g.*, *In re Marriage of McHenry*, 292 Ill. App. 3d 634, 642, 686 N.E.2d 670 (1997) (where a party to a dissolution proceeding does not request a hearing on its ability to pay attorney fees, the trial court may award fees based upon the pleadings, affidavits, and its own experience).

GMAC first contends that the hourly rates plaintiff's counsel charged were excessive. The record shows that plaintiff's attorneys, Keith J. Keogh (partner) and Elizabeth Monkus (associate), charged hourly rates of $300 and $270, respectively, for their work on this case. Work performed by a paralegal, Linda Barksdale, was billed at $90 per hour.

In a contingent, statutory fee-shifting case such as this, a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988), citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 79 L. Ed. 2d 891, 900 n.11, 104 S. Ct. 1541, 1547 n.11 (1984). In support of their hourly rates, plaintiff's counsel submitted declarations listing their educational backgrounds and legal experience; affidavits from three experienced and reputable litigators outlining their hourly rates in the area of consumer fraud litigation—James Shedden (up to $550 per hour), Lance Raphael (up to $450 per hour), and Michael B. Hymen (averred that three-year associates in consumer class actions billed at $285 per hour)—and a declaration from James Shedden attesting to attorney Keogh's work product and reputation as a litigator in the area of consumer protection law.

GMAC contends the trial court erred in considering these affidavits because they were attached to plaintiff's reply brief which the court allowed him to file instanter without notice. We disagree, since a trial court has the discretion to receive additional evidence at the post-trial stage of a proceeding. See *Beverly Bank v. Board of Review of Will County*, 193 Ill. App. 3d 130, 140, 550 N.E.2d 567 (1989).

On the merits, GMAC claims that the hourly rates plaintiff's counsel charged in this case were unreasonable because they were based on market rates for attorneys engaged in complex litigation and other unrelated types of cases. We reject this argument since GMAC has not presented sufficient evidence showing that the market rates for litigators handling consumer fraud cases in Chicago is lower than the prevailing market rates for civil litigators in the broader Chicago legal market.

In an attempt to rebut the hourly rates that plaintiff's counsel charged for working on this case, GMAC presented the affidavit of attorney Timothy V. Hoffman. However, the hourly rates that Hoffman charged GMAC do not provide an adequate basis for evaluating the prevailing market rates for litigators handling consumer fraud cases in Chicago because it appears that the rates he charged GMAC were below median. In his affidavit, Hoffman claims that the hourly rates

for attorneys handling consumer fraud litigation in Cook County is within the range of $140 to $225 per hour. Yet he attests that he billed only $135 per hour for the majority of this matter. Therefore, Hoffman's rate was below median by his own admission.

In our view, attorneys Keith J. Keogh and Elizabeth Monkus offered adequate support for their claimed hourly rates. The trial court acted within its discretion in awarding the hourly rates at issue in this case.

GMAC finally maintains the trial court erred in finding that the number of hours plaintiff's counsel expended on this case were reasonable. In assessing such a claim, reviewing courts recognize that this is a factual determination that is usually given great deference since it depends heavily on the trial court's greater familiarity with the case. *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001). A trial court is permitted to use its own knowledge and experience in assessing the time required to complete particular activities. *Cretton v. Protestant Memorial Medical Center, Inc.*, 371 Ill. App. 3d 841, 868, 864 N.E.2d 288 (2007).

GMAC first contends that the number of hours plaintiff's counsel expended on this case were unreasonable in light of the fact that the case involved only one plaintiff and one issue, namely, whether "GMAC should have repossessed the vehicle for the remaining balance due under the loan." We disagree with GMAC's characterization, since the primary issue in this case was not as simple as GMAC suggests.

The primary issue was whether GMAC acted "unfairly" in violation of section 2 of the Consumer Fraud Act, when after plaintiff's vehicle was wrongfully repossessed in contravention of an agreement GMAC had with plaintiff, it recommended that the vehicle be retained until after he satisfied the total outstanding balance.

GMAC next objects to the amount of time plaintiff's counsel spent on the cross-motions for summary judgment where 15.3 hours were spent preparing plaintiff's motion for summary judgment, 5.9 hours for a response to GMAC's motion for summary judgment, 7 hours for plaintiff's reply brief, and 5.7 hours preparing for the hearing on the motion for summary judgments (33.9 hours). In light of the fact that GMAC never requested an evidentiary hearing on plaintiff's petition for attorney fees and because the trial court had the benefit of observing plaintiff's counsel throughout the proceedings and was familiar with the issues and all of the pleadings filed by counsel, we cannot say that the court erred in not finding that the number of hours expended by counsel was excessive. See, *e.g.*, *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 103-04, 753 N.E.2d 1138 (2001) (in assessing the reasonableness of the amount of time expended, the trial

court considered the number of times the parties appeared before the court, the size of the briefs submitted, the amount of research required for the various arguments, and the amount of discovery). In addition, GMAC has not produced any evidence suggesting that attorneys with similar experience would have been more efficient than plaintiff's attorneys.

Finally, we disagree with GMAC's contention that it was unreasonable for plaintiff to have two attorneys present at trial. A "litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case." *Lipsett v. Blanco*, 975 F.2d 934, 939 (1st Cir. 1992).

The history of this case reveals that GMAC vigorously contested all issues, never proffered settlement with respect to the consumer fraud claim and vigorously litigated that issue. The case remained on the docket for over two years, proceeded to trial on the issue of damages, and is now before us on appeal. The trial court was in the best position to assess whether it was unreasonable for plaintiff to have two attorneys present at trial. Moreover, GMAC's objection is undermined by the fact that it also utilized two attorneys at trial.

Accordingly, for the reasons set forth above, we affirm the judgments of the circuit court. We affirm the circuit court's order awarding plaintiff $53,101 in attorney fees, and $1,151.50 in costs under the Consumer Fraud Act. In addition, we remand the case to the circuit court for consideration of plaintiff's attorney fees and costs incurred in defending this appeal. *Warren v. LeMay*, 142 Ill. App. 3d 550, 584, 491 N.E.2d 464 (1986); *Melton v. Frigidare*, 346 Ill. App. 3d 331, 341, 805 N.E.2d 322 (2004).

Affirmed and remanded with directions.

HOFFMAN, P.J., and KARNEZIS, J., concur.