In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1603

STEVEN GREENBERGER, individually and
on behalf of all others similarly situated,

*Plaintiff-Appellant,*

*v.*

GEICO GENERAL INSURANCE COMPANY, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 5539—**Blanche M. Manning**, *Judge.*

ARGUED SEPTEMBER 25, 2009—DECIDED JANUARY 10, 2011

Before EASTERBROOK, *Chief Judge*, and KANNE and
SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Steven Greenberger's car was
damaged in an accident, and the next day his insurer,
GEICO General Insurance Co., estimated the damage
and wrote him a check to cover his claim. Greenberger
accepted this payment but never repaired the car.

Instead, he donated the car to charity and later sued GEICO in state court alleging breach of contract, consumer fraud in violation of 815 Ill. Comp. Stat. 505/1 *et seq.*, and common-law fraud. The suit was filed as a class action, so GEICO removed it to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Though legally distinct, Greenberger's contract and fraud claims are all premised on the same basic factual allegation: that GEICO systematically omits necessary repairs from its collision-damage estimates in violation of the promise to restore the policyholder's vehicle to its preloss condition. The district court sidestepped the class-certification question, dismissed the statutory consumer-fraud claim, and then entered summary judgment for GEICO on the breach-of-contract and common-law fraud counts. Greenberger appeals.

We affirm. All of Greenberger's claims are foreclosed by the Illinois Supreme Court's comprehensive decision in *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801 (Ill. 2005). Among other important holdings, *Avery* established the common-sense proposition that a policyholder's suit against his insurer for breach of its promise to restore his collision-damaged car to its preloss condition cannot succeed without an examination of the car. *Id.* at 826. Greenberger gave away his car, and without it, he cannot prove that what GEICO paid him was inadequate to restore the car to its preloss condition.

*Avery* also made clear that fraud claims must contain something more than reformulated allegations of a con-

tractual breach. *Id.* at 844. Greenberger alleges that GEICO never intended to restore his car to its preloss condition and failed to disclose that it regularly breaches this contractual promise. These are breach-of-contract allegations dressed up in the language of fraud. They cannot support statutory or common-law fraud claims.

## I. Background

On July 4, 2002, Greenberger, a professor and administrator at a Chicago law school, was involved in an automobile accident, and his 1994 Acura sustained damage to its bumper, steering box, suspension, and lower body. The next day, a GEICO insurance adjuster inspected the car at Greenberger's home and wrote him a check for $3,284.69 ($3,784.69 minus a $500 deductible). Greenberger cashed the check but did not repair his car. Five months later, a stranger approached Greenberger in a parking lot and expressed interest in buying the car. Greenberger permitted this prospective buyer to take the Acura to a friend's body shop for an estimate of what it would cost to repair it. The buyer's mechanic, Sarkit Tokat of Lake Side Auto Rebuilders, delivered an estimate of $4,938.65, about $1,150 higher than GEICO's estimate. The sale was not made, however, and in December 2002 Greenberger donated the car to charity without making any repairs.

Exactly three years after accepting GEICO's payment on his claim, Greenberger filed this proposed class-action lawsuit in Cook County Circuit Court alleging

breach of contract, violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.*, and common-law fraud.[1] He claimed that GEICO systematically underpays on its auto-accident claims by omitting necessary repairs from vehicle-damage estimates. This practice, he alleged, violates GEICO's contractual promise to restore the insured's vehicle to its preloss condition and constitutes statutory and common-law fraud. GEICO removed the case to federal court under the Class Action Fairness Act, 18 U.S.C. § 1332(d) ("CAFA").

The district court dismissed the statutory consumer-fraud claim without prejudice. Greenberger amended his complaint and again the court dismissed the statutory claim, this time with prejudice, and also denied Greenberger's motion to file a third amended complaint. Greenberger's other claims, however, were allowed to proceed. The court eventually granted GEICO's motion for summary judgment on the breach-of-contract and common-law fraud claims, and accordingly did not address the issue of class certification. After an unsuccessful motion for reconsideration, Greenberger appealed.

At oral argument we asked counsel whether the district court's failure to certify a class had any effect on the court's subject-matter jurisdiction. In supplemental briefing GEICO argued that federal jurisdiction

---

[1] The complaint also asserted a claim for unjust enrichment. This claim was dismissed and is not at issue on appeal.

was intact under CAFA even though the district court bypassed the issue of class-certification. Greenberger argued the opposite: that the district court lost jurisdiction to consider his claims on the merits because it never certified the case as a class action.

## II. Discussion

### A. Jurisdiction

As we have noted, we raised the question of subject-matter jurisdiction from the bench and ordered supplemental briefing on whether the district court's failure to certify a class has any effect on federal jurisdiction. The supplementals were filed, but we have since resolved the jurisdictional issue in another case, and our jurisdiction is secure. In *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010), we held that federal jurisdiction under CAFA does not depend on class certification. *Id.* More specifically, *Cunningham* held that a district court's denial of class certification does not oust the court's subject-matter jurisdiction. *Id.*

CAFA confers federal jurisdiction over certain qualifying class actions—those "in which at least one member of the class is a citizen of a different state from any defendant (that is, in which diversity may not be complete)." *Id.* "Class action" is defined as "any civil action *filed* under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C.

§ 1332(d)(1)(B) (emphasis added). This language, we said in *Cunningham*, means that federal jurisdiction does not depend on whether the district court actually certifies a class. 592 F.3d at 806-07. Instead, jurisdiction is determined based on the facts at the time of filing or removal and is not lost by subsequent developments in the case. *Id.* This understanding of CAFA comports with the general principle that (with immaterial exceptions) "jurisdiction once obtained normally is secure." *Id.* at 807; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292-93 (1938).

Applying *Cunningham* here, the district court's failure to certify a class has no effect on federal jurisdiction. At the time of removal, Greenberger's suit was a qualifying class action under CAFA. That the district court sidestepped the issue of class certification does not undermine subject-matter jurisdiction. We may proceed to the merits.

## A. Breach-of-Contract Claim

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in Greenberger's favor. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010). Summary judgment is appropriate if there is no genuine dispute of material fact and GEICO is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

To prevail on his breach-of-contract claim, Greenberger has the burden of proving that the amount GEICO paid

on his auto-collision claim was insufficient to restore his car to its preloss condition. Because Greenberger donated his car to charity, he cannot make the showing of proof required to establish a breach of GEICO's contractual promise. This conclusion flows directly from the Illinois Supreme Court's decision in *Avery. See* 835 N.E.2d at 826.

*Avery* was a nationwide class action against State Farm Automobile Insurance Company challenging the insurer's practice of not using original equipment manufacturer parts ("OEM parts") to repair its insureds' vehicles. The plaintiff-policyholders claimed that this practice breached State Farm's promise to restore collision-damaged cars to their preloss condition and also was fraud. *Id.* at 815. They won a massive award—$1.1 billion—but the judgment did not hold up on review in the Illinois Supreme Court. As relevant here, the court held that the breach-of-contract award could not be affirmed because

> in order to establish a breach of the "pre-loss condition" promise, plaintiffs would have to show that the parts specified or used by State Farm, whether OEM or non-OEM parts, did not restore the vehicle to its preloss condition. A necessary first step in making this showing would be to examine each class member's vehicle to determine its preloss condition.

*Id.* at 826. *Avery* thus stands for the proposition that a claim for breach of an auto insurer's promise to restore an insured's car to its preloss condition cannot succeed without an examination of the car.

Greenberger attempts to distinguish *Avery* on its facts, arguing that he is not challenging the *quality* of the repair work that GEICO provides, but rather its practice of *omitting* certain repairs that are needed to restore an insured's vehicle to its preloss condition. This distinction is immaterial. *Avery* established a general proof requirement for breach-of-contract claims of this type; its holding is not narrowly limited to cases alleging that an insurer's estimate uses substandard repair parts. Simply put, an examination of the insured's vehicle is required to establish a breach of an insurer's contractual promise to restore it to its preloss condition. This is so regardless of whether the claim is based on omitted repairs or the use of substandard repair parts; in both cases the repair work actually covered by the insurer may in fact have been sufficient to restore the vehicle after a collision.

*Avery*'s holding makes sense as a general matter and also in this case, especially considered in light of some of the specific repairs Greenberger contends were wrongly omitted from GEICO's estimate. For instance, he claims that the estimate should have included compensation for the following repair work: "masking openings to prevent overspray," "covering the vehicle to prevent overspray onto glass," "checking seatbelts to ensure they worked properly," and "cleaning the car for delivery to customer." Without the car, it is impossible to tell whether these items—or any others—were in fact necessary for the insurer to make good on its promise to restore Greenberger's Acura to its preloss condition.

Greenberger claims he can meet his burden of proof using the Lake Side Estimate, which was approximately $1,150 more than GEICO's. Not so. The basic problem under *Avery* remains: Greenberger cannot produce the vehicle for examination to determine which (if any) of the allegedly omitted repair items was in fact necessary to fulfill GEICO's contractual promise. That he obtained a higher estimate some months after the accident does not prove that GEICO's payment would have failed to restore the car to its preloss condition. Stated differently, the issue is not what Greenberger *could* have paid to repair his car, but whether GEICO breached its contractual obligation. *See Gaston v. Founders Ins. Co.*, 847 N.E.2d 523, 528 (Ill. App. Ct. 2006) (holding that the amount necessary to repair a vehicle under an insurance contract "refers to the amount the *insurer* must spend to repair the vehicle, not the amount the insured decides to spend"). A higher repair estimate may be evidence supporting the claim but cannot by itself establish breach.

Greenberger maintains that he can prove his breach-of-contract claim under an alternative "industry standards" theory. That is, he contends that GEICO fails to follow industry standards in estimating auto repairs and this is proof that GEICO breached its promise to restore his car to its preloss condition. This theory suffers from the same proof problem: Without an examination of the vehicle, it is impossible to determine which repairs were necessary to fulfill GEICO's promise. Whether GEICO follows "industry standards" does not matter if its estimate was sufficient to restore Greenberger's Acura. The contractual promise at issue here is not a covenant

to repair cars according to "industry standards" but a covenant to restore collision-damaged cars to their preloss condition. The pertinent question thus is whether GEICO's payment was sufficient to fulfill this contractual obligation; under *Avery* the answer to *this* question requires an examination of the car.

Moreover, without the car, Greenberger cannot prove damages. *Avery* is instructive on this point as well. The policyholders in *Avery* argued for a "specification" measure of damages—that is, damages flowing from the mere *specification* of a non-OEM part in an insurance estimate, as opposed to the part's installation in a particular vehicle. The Illinois Supreme Court rejected this argument. *Avery*, 835 N.E.2d at 830-32. The court explained:

> Common sense dictates that any injury resulting from non-OEM parts would be inflicted, not by the mere *specification* of such parts in an estimate, but by the *use* of the parts in the repair of a vehicle. No possible damage could come to a policyholder simply because a non-OEM part was listed on his repair estimate. Only if the part were actually installed, and only if it were shown that this part failed to restore the vehicle to its preloss condition, could it possibly be said that the policyholder suffered damage.

*Id.* This holding is directly applicable to Greenberger's claim. Just as the mere specification of a non-OEM part in an estimate was not an actionable injury in *Avery*, the mere omission of certain repairs from GEICO's estimate is not an actionable injury here. Greenberger

cannot prove damages by reference to noncompliance with "industry standards" for estimating collision loss. This theory, like the "specification damages" theory in *Avery*, "contravenes the basic theory of damages for breach of contract, under which the claimant must establish an actual loss or measurable damages resulting from the breach in order to recover."[2] *Id*.

## B. Fraud Claims

The district court dismissed Greenberger's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq*., gave him an opportunity to replead, then dismissed this count with prejudice for failure to state a claim.[3] Our review is de novo. *Hukic v. Aurora Loan Servs*., 588 F.3d 420, 434 (7th Cir. 2009).

---

[2] Because the breach-of-contract claim fails as a matter of law, we need not address GEICO's various contract-based defenses.

[3] The district court dismissed Greenberger's statutory consumer-fraud claim on GEICO's Rule 12(b)(6) motion, but denied the insurer's motion to dismiss the common-law fraud claim. The Illinois Supreme Court has said that this split result is ordinarily inconsistent because "facts satisfying a claim for common law fraud will necessarily satisfy a claim under the [ICFA]." *Siegel v. Levy Org. Dev. Co., Inc*., 607 N.E.2d 194, 198 (Ill. 1992). We have concluded, however, that *both* fraud counts fail as a matter of law; GEICO's motion to dismiss the common-law claim should have been granted.

The Consumer Fraud Act provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices" in specified commercial transactions. 815 ILL. COMP. STAT. 505/2. "[U]nfair or deceptive acts or practices" under the statute include "false promise[s], misrepresentation[s] . . . or omission[s] of any material fact." *Id*. Claims for violation of the Consumer Fraud Act are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005).

Greenberger alleges that GEICO violated the Act by falsely promising to restore its insureds' vehicles to their preloss condition and failing to disclose to policyholders that it would not keep this promise. The instrument of this fraud, he alleges, is GEICO's damage-estimating software, which systematically omits or underestimates the cost of repairs. *Avery* forecloses this claim. The Consumer Fraud Act is "not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *See Zankle v. Queen Anne Landscaping*, 724 N.E.2d 988, 992-93 (Ill. App. Ct. 2000). *Avery* held that a consumer-fraud claim under the statute requires something more than a garden-variety breach of contract. *See Avery*, 835 N.E.2d at 844 ("A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act.").

Greenberger insists that his consumer-fraud claim is based on more than a simple breach of contract because

it alleges both a "false promise" and a material "omission," both of which are included in the Consumer Fraud Act's definition of "unfair or deceptive acts or practices." These allegations, however, are nothing more than restatements of the claimed breach of contract, albeit using the language of fraud. *Avery* squarely rejected a nearly identical effort to turn a mere breach of contract into a fraud; "[a]s a matter of law, plaintiffs' consumer fraud claim may not be based on the assertion that State Farm breached its promise to restore plaintiffs' vehicles to their 'pre-loss condition' . . . ." 835 N.E.2d at 844. When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract. *Id. Avery* explained that "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Id.* (quoting *Zankle*, 724 N.E.2d at 993). Here, as in *Avery*, the consumer-fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged.

That Greenberger has alleged a "widespread" or "systematic" breach of contract does not suffice to state a claim for consumer fraud under the statute. Greenberger has cited a number of cases involving allegations of systemic fraud in violation of the Consumer Fraud Act, but all are distinguishable because they involved affirmative acts of misrepresentation and not a simple breach of contract multiplied over a prospective plain-

tiff class. *See Rumford v. Countrywide Funding Corp.*, 678 N.E.2d 369, 373 (Ill. App. Ct. 1997) (involving an ICFA claim based on a "pattern of misrepresenting to customers" that they would not be assessed additional charges when their mortgages were released); *Petri v. Gatlin*, 997 F. Supp. 956, 967-68 (N.D. Ill. 1997) (ICFA claim based on the dissemination of "promotional brochures containing misrepresentations of material facts"); c*f. Golembiewski v. Hallberg Ins. Agency, Inc.*, 635 N.E.2d 452, 460 (Ill. App. Ct. 1994) (reversing a directed verdict for the plaintiff because the consumer-fraud allegation was nothing more than a breach-of-contract claim). Greenberger is correct that a widespread, systematic practice of engaging in unfair or deceptive conduct, even in a contractual setting, may be actionable under the statute. But that general proposition doesn't get him very far. It is not the existence of the contract that defeats his consumer-fraud claim, but rather his failure to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise.

Finally, Greenberger appears to contend that any breach of contract that implicates consumer-protection concerns is actionable under the Consumer Fraud Act. For support, he cites *Demitro v. General Motors Acceptance Corp.*, 902 N.E.2d 1163 (Ill. App. Ct. 2009). That case does not help him. *Demitro* involved a claim against a car dealer who had knowingly retained the plaintiff's vehicle after it had been wrongfully repossessed. *Id.* at 1169. The key finding in *Demitro* was that the dealer's conduct amounted to an unfair practice in violation of the Act. The case does not stand for the proposition that

contract breaches arising in the consumer context are always actionable under the consumer-fraud statute. Greenberger needs some stand-alone allegation of a fraudulent act or practice, and he has none here.[4]

---

[4] In its dismissal order, the district court relied on two unreported cases from the Northern District of Illinois from which it discerned a general rule for claims under the Consumer Fraud Act that arise in the contract setting: Precontractual statements that are *inconsistent* with the terms of the parties' contract may give rise to a claim under the Act, but precontractual statements that are *consistent* with the contractual terms may not. *Compare Chi. Messenger Serv., Inc. v. Nextel Commc'ns, Inc.*, No. 01-cv-8820, 2003 WL 22225619 (N.D. Ill. Sept. 24, 2003) (statements consistent with contractual terms may not form basis for consumer-fraud claim under the statute), *with Underwriters Labs., Inc. v. Solarcom LLC*, No. 02-cv-3933, 2002 WL 31103476 (N.D. Ill. Sept. 18, 2002) (precontractual statements that allegedly misrepresented terms of agreement may form the basis of a consumer-fraud claim under the statute). Applying this "rule," the court held that GEICO's precontractual statements were consistent with its written promises and therefore were not actionable under the statute: "[GEICO's precontractual statements] involved promises to pay to repair vehicles to their pre-accident condition, a representation identical to an existing term in the parties' written contract." Although the district court properly dismissed this claim, it should have stopped short of attempting to fashion a new rule for Consumer Fraud Act claims based on the relationship between precontractual statements and contract terms. There is no need to gloss the statute to decide this case. *Avery* holds that the plaintiff

(continued...)

Summary judgment for GEICO on Greenberger's common-law fraud claim was also appropriate, on the same basic reasoning. Like the statutory claim, the common-law fraud count is just a reformulation of the contract claim. Moreover, because Greenberger has failed to identify any fraudulent act distinct from the alleged breach of contract, he cannot satisfy two other elements of common-law fraud: actual reliance on a fraudulent misrepresentation and damages resulting from that reliance. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

In addition, to the extent this is a claim for fraudulent concealment, it requires a duty to disclose material facts, and there is no such duty here. A duty to disclose arises only when the parties have "a special or fiduciary relationship, which would raise a duty to speak." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 817 (Ill. App. Ct. 1998). In Illinois, "[i]t is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Fichtel v. Bd. of Dirs. of River Shore of Naperville Condo. Ass'n*, 907 N.E.2d 903, 912 (Ill. App. Ct. 2009) (citation omitted). A fiduciary duty may be created "where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former," *id.* (citation omitted), but the "mere

---

[4] (...continued)
must allege a deceptive act or practice distinct from a mere breach of contract, and Greenberger has not done so.

fact that a contract of insurance or a contract to settle plaintiffs' claim existed between the parties is insufficient to support a finding of a fiduciary relationship," *Martin v. State Farm Mut. Ins. Co.*, 808 N.E.2d 47, 52 (Ill. App. Ct. 2004); *see id.* (motor-vehicle insurance company has no duty to disclose to its insured material facts about a third-party's insurance); *Fichtel*, 907 N.E.2d at 912 (no duty to disclose where insurance-company investigator told insured he would "take care of" water-damaged roof). The plaintiff has the burden to plead with specificity and prove by clear and convincing evidence the existence of a fiduciary or special relationship. *Martin*, 808 N.E.2d at 52.

Greenberger has not satisfied this burden. Insurers ordinarily are not fiduciaries, and the facts and circumstances here do not suggest any basis for displacing this general rule. Accordingly, GEICO had no duty to disclose. For this additional reason, summary judgment on the common-law fraud claim was appropriate. *See Fichtel*, 907 N.E.2d at 913 (fraudulent-concealment claim cannot survive summary-judgment stage where plaintiff has failed to plead with specificity particular circumstances giving rise to fiduciary duty).

AFFIRMED.