GREG ZANKLE, Plaintiff-Appellant, v. QUEEN ANNE LANDSCAPING *et al.*, Defendants-Appellees.

Second District   No. 2—98—1654

Opinion filed February 1, 2000.

David N. Rechenberg and Michael K. Havrilesko, both of Havrilesko & Rechenberg, P.C., of Rockford, for appellant.

No brief filed for appellees.

JUSTICE INGLIS delivered the opinion of the court:
Plaintiff, Greg Zankle, sued defendants, Queen Anne Landscaping

and its owner, John Heider, alleging breach of contract, breach of implied warranty, negligence, and violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)). At the close of plaintiff's case, the trial court granted judgment for defendants (see 735 ILCS 5/2—1110 (West 1998)) on the counts for breach of implied warranty and consumer fraud but awarded plaintiff damages on the remaining counts. Plaintiff appeals the trial court's ruling on the consumer fraud count. We affirm.

We note that, although plaintiff states that this appeal is brought pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), the judgment from which plaintiff appeals disposed of the entire case. Therefore, our jurisdiction attaches under Supreme Court Rule 301 (155 Ill. 2d R. 301). See generally *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 210-11 (1996).

Defendants have not filed a brief. However, the record is short and we may decide the merits without the aid of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

We summarize plaintiff's complaint. Counts I and II were for breach of contract against Queen Anne Landscaping and Heider, respectively. They alleged the following. On or about October 7, 1992, the parties signed a contract in which, for $4,800, defendants promised to grade, seed, and fertilize all of plaintiff's lawn and to spread 10 loads of topsoil on the lawn. Defendants agreed to fertilize the lawn in the spring and fall and to use a rock picker to remove rocks. A copy of the contract is attached as an exhibit to the complaint.

Counts I and II alleged further that defendants' seeding, grading, and fertilization were unsatisfactory and that defendants did not use a rock picker. As a result of defendants' breaches of the contract, the lawn soon washed out and developed ruts, and plaintiff had to hire a second landscaper to do repairs, including reseeding and refertilizing the lawn and removing rocks. The cost of this repair work was $5,984, which plaintiff demanded from defendants and defendants refused to pay. Plaintiff sought this amount in damages.

Count III alleged that defendants' lawn care materials and services breached an implied warranty of merchantability (810 ILCS 5/2—314 (West 1992)). This count requested the same damages as the first two counts. Count IV alleged that defendants negligently operated their landscaping equipment causing damage to plaintiff's trees.

Count V, the subject of this suit, alleged the following. In agreeing to the contract, plaintiff relied on defendants' representations that the defendants would use a rock picker on plaintiff's yard; that they would

install 10 loads of topsoil; and that they would grade, seed, and fertilize the entire lawn in a workmanlike manner. After the work was completed, plaintiff discovered that defendants did not fulfill these representations. Defendants' "representations and failures to disclose" were unfair and deceptive conduct prohibited by the Consumer Fraud Act. Plaintiff sought $25,000 in compensatory damages plus punitive damages and attorney fees.

Plaintiff's witnesses at trial were himself, Heider, and Rick Laudick of Laudick Landscaping, the firm that repaired plaintiff's lawn. According to the certified bystander's report, plaintiff testified as follows. In September 1992, he contacted Heider about installing a new lawn on plaintiff's property. When Heider examined the property, he and plaintiff agreed that the whole property would be seeded, and plaintiff understood that defendants would remove rocks from the lawn.

According to plaintiff, defendants' work was unsatisfactory in several respects. Defendants promised to complete the work by October 7, 1992, but they took until November 7, 1992. Defendants damaged several trees with an estimated replacement cost of $1,000. Defendants failed to install topsoil on the back 20 feet of the property, and, although defendants did some sort of raking to remove rocks by hand, they did not use a rock picker. Plaintiff was not certain whether defendants fertilized the lawn in the fall, and they did not do so in the spring. Now, when plaintiff mows his lawn, "sometimes" rocks "heave up."

Shortly after the work was done, several days of rain caused considerable erosion of the lawn. In mid-November 1992, plaintiff called Heider about the problem; Heider spread a little dirt on the front and some straw over an eroded area in the back. In spring 1993, plaintiff noticed that weeds were growing on his property and that the topsoil defendants spread had been washed away. There were rocks where the soil had washed away. Further efforts to get defendants to repair the lawn got no response, so plaintiff hired Laudick Landscaping, whose efforts included reseeding the lawn and removing three tons of rocks. Since Laudick Landscaping finished its work, there have been no more problems.

Rick Laudick testified in pertinent part as follows. When he inspected the property, he saw weeds and wide ditches; the lawn had pretty much been washed away. Laudick reseeded the property, distributed dirt through the torn-up area, and provided erosion control. Laudick removed rocks from the property. At trial he explained that a rock picker sifts through six to eight inches of soil to bring up rocks. Laudick Landscaping did not use a rock picker because the cost to plaintiff would have been twice as much.

John Heider, called as an adverse witness, testified as follows. The contract called for defendants to grade and seed the entire lawn, spread topsoil, fill in two holes, fertilize in the fall, and use a rock picker to remove rocks. Defendants did not own a rock picker and had not rented one in five years. He spread dirt on the property but skipped part of the back because, as he told plaintiff, he believed there was enough soil in that area. In fall 1992, plaintiff complained of soil erosion, which Heider treated with dirt or straw, and of tree damage, for which Heider agreed to pay. In 1993, Heider and plaintiff were to meet to discuss the erosion problem, but plaintiff did not show.

Plaintiff asserts that, on the evidence we have summarized, the trial court erred in entering a "directed verdict" for defendants on his consumer fraud claim. Relying on *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967), plaintiff states that the "directed verdict" may stand only if all the evidence, when viewed in the light most favorable to plaintiff, so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand.

■ We must observe that plaintiff misstates the governing law. Plaintiff's argument fails to recognize that *Pedrick* applies to a *jury* trial, where a motion for a directed verdict asks the trial court to take the case from the fact finder. In a *bench* trial, where the trial court *is* the fact finder, a motion for a "directed verdict" is governed not by *Pedrick* but by section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1998)). *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154 (1980); *Bafia v. City International Trucks, Inc.*, 258 Ill. App. 3d 4, 11-12 (1994); see *City of Evanston v. Ridgeview House, Inc.*, 64 Ill. 2d 40, 57 (1976). Section 2—1110 provides that, in ruling on a motion to find for the defendant at the close of the plaintiff's evidence, the trial court "shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." 735 ILCS 5/2—1110 (West 1998). Thus, the trial court does not view the evidence most favorably to the plaintiff but, rather, (1) determines whether the plaintiff has made out a *prima facie* case, then (2) weighs the evidence, including that which favors the defendant. *Kokinis*, 81 Ill. 2d at 154. If this weighing process negates some of the evidence necessary to the plaintiff's *prima facie* case, the court should grant the defendant's motion and enter judgment for the defendant. *Kokinis*, 81 Ill. 2d at 154-55. We shall uphold the grant of a section 2—1110 motion unless the judgment is against the manifest weight of the evidence. *Kokinis*, 81 Ill. 2d at 154.

■ We now discuss whether the trial court erred in concluding that plaintiff did not make out a *prima facie* case of consumer fraud. The elements of a cause of action under the Consumer Fraud Act are

(1) a deceptive act or practice; (2) the intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of trade or commerce. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). Moreover, although the plaintiff need not prove that he relied on the deceptive act, he must prove that the deception proximately caused his injury. *Connick*, 174 Ill. 2d at 502; *Stehl v. Brown's Sporting Goods, Inc.*, 236 Ill. App. 3d 976, 981 (1992).

Plaintiff argues that, from the evidence, the fact finder could infer that defendants engaged in misrepresentations (see 815 ILCS 505/2 (West 1992)) in that they falsely told him that they would finish the project by October 7; that they would use a rock picker; that they would fertilize the lawn twice; and that they would install the lawn "in a workmanlike manner." According to plaintiff, he supplied evidence that defendants intended that he rely on these misrepresentations and that the misrepresentations caused plaintiff's economic injury.

■ We cannot accept plaintiff's broad reading of the statute. What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. See *Law Offices of William J. Stogsdill v. Cragin Federal Bank for Savings*, 268 Ill. App. 3d 433, 437-38 (1995); *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994). We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.

A sister jurisdiction has reached the same conclusion in construing a similar consumer fraud statute. In *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex. 1996), the court held that the plaintiff could not recover for consumer fraud because at most the evidence showed only (a) that the defendants assured the plaintiff that they would publish the plaintiff's ad in the yellow pages and (b) that the defendants failed to publish the ad. The court held that the defendants' assurances that the ad would be published were not false, misleading, or deceptive under the consumer fraud law, as to hold otherwise would convert every breach of contract action into a statutory consumer fraud claim. *Crawford*, 917 S.W.2d at 14. Also, "[t]he *statements* themselves did not cause any harm. The failure to run the advertisement (the breach of

the contract) actually caused the lost profits \*\*\*." (Emphasis in original.) *Crawford*, 917 S.W.2d at 14. We think *Crawford*'s reasoning is sound and applies equally to our consumer fraud statute.

Here, because a naked breach-of-contract claim does not support a Consumer Fraud Act claim, plaintiff could not make his *prima facie* case simply by adducing evidence that defendants did not do what they promised. However, in the main, plaintiff's evidence proves little else. Thus, defendants' mere failure to complete the project on time, fertilize the lawn twice, or do a workmanlike job does not mean they committed consumer fraud.

The one alleged misrepresentation that may amount to more than a mere unfulfilled promise is defendants' assurance that they would use a rock picker. Here, plaintiff's evidence did show that, when defendants made this promise, they did not own a rock picker and had not used one for five years. However, we cannot say that the trial court was required to infer from this somewhat ambiguous evidence that defendants' promise was deceptive or unfair when they made it. Moreover, even if the court found that the promise was an actionable misrepresentation, it could conclude that plaintiff had not made a *prima facie* case because he had failed to show that the misrepresentation proximately caused his injury. Plaintiff testified that, after Laudick repaired the lawn, there were "no problems." Laudick testified that he did not use a rock picker. From this evidence, the trial court could conclude that defendants could have removed rocks satisfactorily even without a rock picker and that their failure to use that particular contraption was not crucial. Also, the trial court could have found that insufficient evidence demonstrated that the use of a rock picker would have removed the occasional rocks that plaintiff still notices or that these remaining rocks cause plaintiff more than minimal injury. Thus, the court could find that defendants' assurances that they would use a rock picker, even if otherwise actionable, did not proximately cause plaintiff's injuries.

The evidence supports the judgment for defendants at the close of plaintiff's case on count V of the complaint. Therefore, we affirm the trial court's ruling.

The judgment of the circuit court of McHenry County is affirmed.

Affirmed.

BOWMAN, P.J., and COLWELL, J., concur.