JOHAN DWYER, Plaintiff-Appellee, v. WILLIAM R. LOVE *et al.*, Defendants-Appellants.

Second District    No. 2—02—1404

Opinion filed March 2, 2004.

John M. Nelson, of Rockford, for appellants.

James E. Meason, of Rockton, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Johan Dwyer, filed a complaint in the circuit court of Winnebago County seeking declarative and injunctive relief against defendants, William R. Love and Jody Romano Love. The parties dispute ownership of a strip of land approximately 4 to 11 feet in width on the western edge of Johan's property and on the eastern edge of the Loves' property. The trial court found that Johan had

acquired the land by adverse possession. On appeal, the Loves contend that the trial court erred by denying their motion for a directed finding and that the court's adverse possession finding is against the manifest weight of the evidence. As both of these arguments lack merit, we affirm.

Johan's property is a farm situated in Roscoe. She has lived on the farm since 1956 when she married John Dwyer. John is now deceased, but he ran the farm for over 40 years until his death in 1996. After his death, John's son, also named John Dwyer (John Jr.), managed the farm. The Dwyers grow crops such as corn and soybeans and also raise livestock, primarily cattle.

The western boundary line of the farm, at issue in this case, is approximately a half mile long and physically defined by a wire fence and hedgerow. The hedgerow consists of wild shrubs and many trees that have grown around the fence. The fence runs from the northern to the southern edge of the adjacent properties and parallels a small ridge for most of the way. Johan testified that the fence existed when she married John, but it probably dates much earlier than 1956. In 1986, a fence viewing was conducted by Patrick Henderson, a Roscoe Township trustee, to address the Dwyers' complaint that the prior owners of the Loves' property were neglecting to maintain a fair share of the fence. Henderson ordered the Dwyers to maintain the northern half of the fence, while the previous owners of the Loves' property were ordered to maintain the southern half. The Dwyers have maintained the northern half of the fence in reasonably good condition. However, the southern portion has fallen into disrepair. At various points along the southern portion, the fence can no longer sufficiently constrain the Dwyers' livestock.

The Loves purchased their property in 1991. In 1998, William hired a surveyor to survey his property. According to the survey markers, the Loves' property extends about 4 feet past the fence at the northern end of the property and up to 11 feet at the southern end.

The Dwyers have cultivated the fields along the fence or used them as pasturage every year since at least 1956. Primarily, the fields are used to grow corn and soybeans. According to Johan and John Jr., they grow crops all the way to the fence line, impliedly including the disputed area. The disputed area has always been under the Dwyers' exclusive control. Besides the Loves, no one has ever challenged their ownership of the property. Contrary to the Dwyers' position, William maintains that the crops do not grow up to the fence line. Instead, based on his observations, the crops end 15 to 20 feet from the fence.

In the end, the trial court denied the Loves' motion for a directed finding. More important, the trial court found that Johan had

established by clear and convincing evidence that she had acquired all of the property east of the fence line by adverse possession. In the court's view, the Dwyers' possession of the disputed area was an "exclusive exercise of control and dominion" since at least 1956. The court pointed to the fence viewing, the Dwyers' maintenance of the fence, and the continuous cultivation of crops almost to the fence as evidence to support its conclusion.

The trial court further stated that the southern portion of the fence is in disrepair largely because the Loves have refused to repair it. Nevertheless, the court found that Johan provided sufficient evidence that the Dwyers exclusively possessed all of the land east of the fence in an open and hostile manner.

Last, the trial court rejected the Loves' argument that the southern fence line cannot form a discernable boundary line because of its shabby condition and the fact that at various spots there are apparent gaps in the fence line due to fallen fence wire. The court found that the fence line was "clearly capable of discernment" from the northern edge to the southern edge of the western boundary.

The Loves first argue on appeal that the trial court erred by denying their motion for a directed finding. We find that this issue has been waived.

In a bench trial, where the trial court is the trier of fact, a motion for a directed finding is governed by section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 2002) (formally titled a "Motion in non-jury case to find for defendant at close of plaintiff's evidence")). See *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 311 (2000). Section 2—1110 provides that, "[i]f the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived." 735 ILCS 5/2—1110 (West 2002). Here, when the Loves moved for a directed finding at the end of Johan's case in chief, the trial court decided to "take it under advisement." The court asked the Loves to proceed with the presentation of their evidence. The court assured the Loves that it would decide the motion after all of the evidence was presented. The court promised to distinguish and separately consider the facts to be weighed for purposes of the motion for a directed finding before moving on to deliberate on its final judgment. The Loves then agreed to proceed in this manner. Specifically, in response to the Loves' oral motion for a "directed verdict," the trial court and defense counsel had the following colloquy:

> "THE COURT: Okay. I'm going to take it under advisement. Obviously this is something that you've already prepared for in terms of some type of brief or something. And I understand that

you would not prefer to go ahead with evidence at this point in time, but I think I can keep the two separate. *** I definitely will rule on your motion before I make any decision on any other facts that may be elicited subsequent to this point.

THE COURT: Did you want to put on some testimony now?

DEFENSE COUNSEL: Yes, Judge. I would call my client subject to the [sic] —under the reservation to maintain our motion for directed verdict."

■ We conclude that section 2—1110's waiver provision applies to this situation, notwithstanding the fact that the court's denial of the motion came after the Loves adduced evidence in support of their defense. Once again, section 2—1110 expressly provides that, "[i]f the ruling on the motion is adverse to the defendant, the defendant may proceed to adduce evidence in support of his or her defense, in which event the motion is waived." 735 ILCS 5/2—1110 (West 2002). Section 2—1110 presupposes that a defendant's motion will be denied before the waiver provision is implicated. See *Evans & Associates, Inc. v. Dyer*, 246 Ill. App. 3d 231, 239 (1993) ("a defendant who presents evidence on its behalf after its motion is denied waives any complaint that the denial of the motion was error"); see also *Arians v. Larkin Bank*, 253 Ill. App. 3d 1037, 1047 (1993) ("When a ruling on a motion for directed finding in a nonjury case is adverse to the defendant and the defendant then proceeds to adduce evidence of its own, as occurred in this case, the defendant waives its motion for a directed finding").

In this case, the Loves agreed with the court to have their motion considered after they adduced evidence in their behalf. If the court determined that the motion had merit, it would be granted. However, the Loves agreed that, if the court found that their motion lacked merit, the court would immediately proceed to deliberate on its final judgment. Thus, the Loves agreed in advance that their motion would be waived if the court denied it. Accordingly, we deem this issue waived.

However, even if we were to conclude that the trial court's postponement in ruling on the issue precluded waiver, the trial court properly denied the Loves' motion for a directed finding. Section 2—1110 states that, in making its ruling, the court "shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." 735 ILCS 5/2—1110 (West 2002). "Thus, the trial court does not view the evidence most favorably to the plaintiff but, rather, (1) determines whether the plaintiff has made out a *prima facie* case, then (2) weighs the evidence, including that which favors the defendant." *Zankle*, 311 Ill. App. 3d at 311. "If this weigh-

ing process negates some of the evidence necessary to the plaintiff's *prima facie* case, the court should grant the defendant's motion and enter judgment for the defendant." *Zankle*, 311 Ill. App. 3d at 311. In contrast, where sufficient evidence establishing the plaintiff's *prima facie* case remains after the weighing process, the trial court should deny the motion and proceed as if the motion had not been made. *Pacini v. Regopoulos*, 281 Ill. App. 3d 274, 278 (1996). We will not disturb the trial court's determination on the motion unless it is against the manifest weight of the evidence. See *Zankle*, 311 Ill. App. 3d at 311; *Pacini*, 281 Ill. App. 3d at 278.

■ To establish title by adverse possession as provided by section 13—101 of the Limitations Act (735 ILCS 5/13—101 (West 2002)), the asserted adverse possessor must possess the disputed land for 20 years. 735 ILCS 5/13—101 (West 2002). The 20 years of possession must have been: (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under claim of title inconsistent with that of the true owner. *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1035 (1996).

■ Johan presented sufficient evidence on all of the elements of adverse possession to survive the Loves' motion for a directed finding. The Dwyers have continuously cultivated or used the disputed land as pasturage every year since at least 1956. See *Applebey v. Lenschow*, 144 Ill. App. 3d 208, 214 (1986) (cultivation of land year after year is evidence of adverse possession). We accept the trial court's conclusion that these activities took place almost up to the physical fence itself. Beyond that, the fact that the Dwyers had a fence viewing conducted and continuously maintained the northern portion of the fence in accordance with the fence viewing further evinces their actual and adverse possession of all of the land east of the fence. See *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981) (stating that the hostile or adverse nature of the possession simply means that the possession is incompatible with that of the true owner and all others). These same facts, along with Johan's and John Jr.'s testimony that they solely managed and controlled all of the land east of the fence, demonstrate that the Dwyers exercised "open, notorious, and exclusive" possession. See *Welliver*, 278 Ill. App. 3d at 1039 (requiring that possession indicate to persons residing in the community who has the exclusive management and control of the land). Moreover, irrespective of the Loves' claims to the contrary, the fence and the hedgerow created a clearly discernable boundary line from the northern edge to the southern edge of the property. We find that sufficient evidence establishing Johan's *prima facie* case remained after the trial court conducted the section 2—1110 weighing process (735 ILCS 5/2—1110 (West 2002)), and that the trial

court properly denied the motion. The trial court's denial of the motion was not against the manifest weight of the evidence.

In their second argument, the Loves contend that the trial court's findings were against the manifest weight of the evidence. Specifically, the Loves argue that they introduced the "most important pieces of evidence in this case." They maintain that the strip of land at issue is "too negligible" to be adversely possessed by the Dwyers and that the Dwyers' crops do not extend all the way to the fence. We reject these arguments as well.

■ First of all, it is the function of the trial court to determine what are the "most important pieces of evidence." See *Chicago Transparent Products, Inc. v. American National Bank & Trust Co. of Chicago*, 337 Ill. App. 3d 931, 941 (2002). Nonetheless, all presumptions are drawn in favor of the title owner, and the party claiming title by adverse possession bears the burden of proving each element by clear and unequivocal evidence. *Welliver*, 278 Ill. App. 3d at 1036. The "clear and unequivocal" standard of proof is equated with the more common "clear and convincing" standard. See *Welliver*, 278 Ill. App. 3d at 1036. On review, the trial court's findings will not be disturbed unless they are against the manifest weight of the evidence. *Welliver*, 278 Ill. App. 3d at 1036.

■ For essentially the same reasons that the motion for a directed finding was properly denied, we find that Johan met her burden of proof by clear and convincing evidence. The Dwyers continuously cultivated or used the disputed strip of land as pasturage for over 40 years. The trial court disagreed with the Loves' assertion that the disputed area was too small to be utilized, and also chose not to accept William's claim that the Dwyers' crops stopped well short of the fence line. Rather, the court appears to have believed the testimony of Johan and John Jr., concluding that the cultivation of the land continued "up to almost the fence line itself." Moreover, the cultivation of the adversely possessed land is not dispositive of the issue. In the past, the strip of land was used as pasturage. Furthermore, whether through the fence viewing or their own maintenance of the northern portion of the fence, the Dwyers have taken substantial steps over the years to enclose the disputed area within the fold of their own farm. The bottom line is that the Dwyers have continuously exercised open and exclusive dominion over the disputed property in a manner consistent with ownership for over 40 years. Thus, Johan has satisfied her burden of proof. Accordingly, we conclude that the trial court's findings were not against the manifest weight of the evidence.

For the aforementioned reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

McLAREN and KAPALA, JJ., concur.