2015 IL App (3d) 140257

Opinion filed December 17, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit |
| GREGORY W. ANDERSON, | ) | Will County, Illinois |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | Appeal No. 3-14-0257 |
| | ) | Circuit No. 08-D-1887 |
| MARY J. ANDERSON, | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |
| | ) | |
| (MICHAEL D. CANULLI, | ) | Honorable |
| | ) | Dinah L. Archambeault |
| Appellant). | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Presiding Justice McDade dissented, with opinion.

**OPINION**

¶ 1     Appellant Michael Canulli filed a motion for contribution against petitioner Gregory Anderson to recover attorney fees incurred by Gregory's now-former wife, Mary Anderson, who Canulli represented for a two-year period during Gregory and Mary's dissolution proceedings. A

hearing took place on the petition, and after Canulli presented his case, Gregory moved for a directed verdict. The trial court granted Gregory's motion and dismissed Canulli's petition for contribution. We reverse and remand.

¶ 2                                                          FACTS

¶ 3        Petitioner Gregory Anderson and respondent Mary Anderson were married in 1992. Gregory filed a petition for dissolution of the marriage in October 2008, and Mary retained Michael Canulli as her attorney the same month. During the pendency of the proceedings, Mary filed several motions for attorney fees and was awarded fees from the marital assets, as was Gregory. Mary discharged Canulli in February 2010, Canulli moved to withdraw, and leave was granted in March 2010. Also in March, Gregory filed bankruptcy. Mary, too, filed bankruptcy during the pendency of the proceedings. On March 2, 2011, Canulli filed a petition for contribution seeking to recover Mary's attorney fees from Gregory, who did not discharge Canulli's contribution claim in his bankruptcy.

¶ 4        On March 9, 2011, the trial court entered the judgment of dissolution, which incorporated Gregory and Mary's marital settlement agreement. The agreement allocated all the attorney fees owed to Canulli to Mary, stating she was "solely responsible" for them and waiving any contribution from Gregory "for payment of the same." The marital settlement agreement also provided that Mary execute a quit claim deed to Gregory waiving her interest in the office condominium as "an equalization and reallocation of attorney's fees paid" to Canulli. Gregory was awarded the parties' business and ordered to pay maintenance of 7.5% of its adjusted gross revenues. The parties divided their personal property, and each received half of their retirement and bank accounts. Gregory was provided the parties' two vehicles, with payment to Mary for one.

2

¶ 5        On March 29, 2011, Canulli sought a hearing date for his petition for contribution.  In May 2011, the trial court entered an order staying the contribution petition, pending resolution of the bankruptcy Mary filed.  Mary's bankruptcy was finalized in August 2011 and discharged the attorney fees she owed Canulli. In September 2011, Canulli moved to vacate the dissolution judgment and to set his contribution petition for a hearing.  Canulli failed to attend a November 1, 2011, court date on his motion to vacate, and the trial court struck all pending motions filed by Canulli.  In March 2012, the trial court reinstated Canulli's petition for contribution on Canulli's motion to vacate the November 2011 order.

¶ 6        In June 2012, Gregory filed a motion to dismiss Canulli's contribution petition, alleging that the attorney had failed to appear in March 2011 for the hearing on his petition; that his client, Mary, had discharged her debts in bankruptcy; that Gregory could not be required to pay Mary's discharged debts; and that there were no statutory provisions allowing for a late contribution hearing.  Canulli failed to appear at an August 2012 hearing, where the trial court denied Gregory's motion to dismiss.  The trial court further ruled that the contribution petition would be based on the parties' facts and circumstances on March 9, 2011, the date the dissolution judgment was entered.

¶ 7        Hearings took place on Canulli's contribution petition.  Canulli testified he had been an attorney since 1978 and practiced primarily family law. Mary signed a retainer agreement with him which requested a $3,500 retainer and an hourly fee of $350.  Canulli represented Mary for two years, withdrawing from representation on February 17, 2010.  His billing ledger, which was introduced into evidence, indicated that he charged Mary $171,234 and had received $94,208 in payments.  Mary testified that she was 62 years old and that she and Gregory had been married nearly 19 years at the time the judgment of dissolution was entered.  The marital home was in

foreclosure, and per the judgment, neither she nor Gregory were required to pay the mortgage. Mary was recovering from a broken back and had been unable to drive or sit or stand for long periods. She was receiving an unspecified weekly allowance from the couple's business and $341 per month in Social Security benefits. Mary paid $550 per month for insurance but could not recall any other expenses. She did not own a car and did not pay car insurance. Gregory testified that he was a financial advisor, licensed to sell and trade securities, and owned a financial services business. He and Mary each received an equal allowance from the business. Gregory did not live in the marital home. His March 2011 income and expense disclosure indicated that he had monthly expenses of $5,417, and monthly income of $6,398.

¶ 8    Gregory moved for a directed verdict at the close of Canulli's case. The trial court took the motion under advisement and granted it in a September 13, 2013, order. The trial court determined that although Canulli offered some evidence that Mary could not pay her fees, he did not offer any evidence regarding her expenses and failed to establish her inability to pay. The trial court dismissed Canulli's petition. He moved for reconsideration, which the trial court heard and denied after a hearing in February 2014. Canulli appealed.

¶ 9                                             ANALYSIS

¶ 10    The issues on appeal are whether the trial court erred when it granted Gregory's motion for a directed verdict, when it failed to require Mary to file a financial disclosure, and when it refused to allow evidence of the parties' financial circumstances at the time of the contribution hearing.

¶ 11    In a bench trial, at the close of a plaintiff's case, a defendant may move for a judgment in his favor. 735 ILCS 5/2-1110 (West 2010). A trial court will grant a motion for judgment at the close of a plaintiff's case for one of two reasons: (1) the plaintiff failed to establish a *prima facie*

4

case or (2) the plaintiff failed to carry the ultimate burden of proof. *Barnes v. Michalski*, 399 Ill. App. 3d 254, 263 (2010). Where the plaintiff has set forth a *prima facie* case, the trial court, as finder of fact, must weigh the evidence and assess the credibility of the witnesses. *Barnes*, 399 Ill. App. 3d at 263-64. We will not reverse a trial court's decision on a motion for judgment unless it was against the manifest weight of the evidence. *Dwyer v. Love*, 346 Ill. App. 3d 734, 739 (2004).

¶ 12    A trial court may order either party to pay the reasonable attorney fees of his spouse. 750 ILCS 5/508(a) (West 2010). Section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508 (West 2010)) governs attorney fees in postdecree proceedings. *Blum v. Koster*, 235 Ill. 2d 21, 46 (2009). Section 508(a) directs that contribution to attorney fees may be ordered from an opposing party in accord with section 503(j) of the Act (750 ILCS 5/503(j), 508(a) (West 2010). Pursuant to section 503(j), in deciding the petition for contribution, the trial court must consider the factors for property distribution set forth in section 503 (750 ILCS 5/503 (West 2010)) and for maintenance set forth in section 504 (750 ILCS 5/504 (West 2010)) of the Act (750 ILCS 5/503(j)(2) (West 2010)). In determining an award of attorney fees, the trial court considers the relative financial circumstances of the parties, including the allocation of assets and liabilities, maintenance and the parties' relative earning abilities. *In re Marriage of Streur*, 2011 IL App (1st) 082326, ¶ 36, *modified on denial of reh'g* (June 15, 2011).

¶ 13    Section 503(j) of the Act requires that the contribution petition be heard and decided "before judgment is entered." 750 ILCS 5/503(j) (West 2010); *In re Marriage of Cozzi-DiGiovanni*, 2014 IL App (1st) 130109, ¶ 40. Section 503(j) also authorizes a party to file a petition for contribution up to 30 days after the closing of proofs in the final hearing or within any time the trial court allows. 750 ILCS 5/503(j)(1) (West 2010). The timing requirements of

section 503(j) are not jurisdictional prerequisites for a party's contribution petition. *Cozzi-DiGiovanni*, 2014 IL App (1st) 130109, ¶ 40. A court retains jurisdiction to hear a petition for contribution where the trial court did not decide the contribution petition prior to entry of the judgment of dissolution. *Cozzi-DiGiovanni*, 2014 IL App (1st) 130109, ¶ 47.

¶ 14    We first address whether Canulli's petition for contribution was timely. Although Canulli filed it during the pendency of the dissolution hearings, he failed to appear at the hearing on the petition for dissolution and Gregory sought dismissal of the contribution petition. The trial court noted, and opposing counsel agreed, that the trial court's prior order entered February 24, 2011, granted Canulli 28 days to file the petition for contribution and then allowed Gregory 28 days to reply. The dissolution hearing was held on March 9, 2011, which was within the time period for the parties to file the contribution petition and to reply to it. The trial court determined it had to allow Canulli to proceed with the contribution petition based on its February 24 order.

¶ 15    Even in the absence of the unusual procedural posture here, we find Canulli's petition was timely filed. As previously noted, he filed the petition for contribution prior to the hearing on the judgment of dissolution. Section 508(a) allows for pre- and postjudgment hearings for fee petitions. Section 503(j)(1) provides that a fee petition may be filed within 30 days after proofs have closed in a dissolution action, from which we determine that the trial court may hear and determine a contribution petition after the judgment of dissolution has been entered. On this determination, the trial court's reasoning was wrong. However, we agree with its finding that the fee petition was not untimely. Canulli timely filed the petition prior to the entry of the judgment of dissolution, even though it was not heard until after judgment was entered.

¶ 16    Having determined Canulli's petition was timely filed, we next consider whether the trial court erred in granting the directed verdict in favor of Gregory. The trial court found that Canulli

6

failed to establish Mary's inability to pay, entitling Gregory to a verdict directed in his favor. Canulli claims that the trial court erred in failing to require Mary to submit a financial disclosure pursuant to Will County local rule. According to Canulli, Mary's financial affidavit was necessary for him to establish her inability to pay.

¶ 17 Will County local Rule 8.04 provides that in all proceedings for attorney fees, "both parties shall comply with reasonable requests served upon them for financial information including documents and information as to income, assets, and expenses to be provided at hearing." 12th Judicial Cir. Ct. R. 8.04 (Nov. 7, 2001). Local Rule 8.05 provides that in attorney fee proceedings, "the moving party shall prepare a financial disclosure under oath" and serve the opposing party three days before the hearing, unless the trial court otherwise directs based on good cause shown. 12th Judicial Cir. Ct. R. 8.05(A) (Nov. 7, 2001). The responding party must serve a financial disclosure prepared "under oath and in the same form" prior to hearing and failure to do so may result in sanctions. 12th Judicial Cir. Ct. R. 8.05(B), (C) (Nov. 7, 2001). Local rules are not mere suggestions or guidelines but are meant to be followed as written. *VC&M, Ltd. v. Andrews*, 2013 IL 114445, ¶ 26.

¶ 18 Despite Canulli's repeated request that Mary submit a financial affidavit disclosing her income and expenses, the trial court refused to require Mary to provide an affidavit. The trial court relied on the date the parties' judgment of dissolution was entered as the appropriate timeframe to determine the parties' financial circumstances. The trial court refused to consider evidence of Mary's bankruptcy, which was final in August 2011 because it was entered after the judgment of dissolution, and rejected Canulli's requests that Mary file a financial affidavit. Although we reject the trial court's reasoning, we agree with its conclusion that Mary's financial affidavit was not necessary at this juncture in the proceedings. Mary's attorney fee debt was

7

discharged by the bankruptcy court. The discharge prevents Canulli and the trial court from seeking any portion of the debt payment from Mary. *Pittman v. Manion*, 212 Ill. App. 3d 342, 349 (1991) ("discharge in bankruptcy serves as an injunction for actions to collect debts as a personal liability"). Because Mary cannot be held liable to pay the attorney fees, Mary's financial affidavit was irrelevant to the disposition of the fee petition.

¶ 19    Canulli sought Mary's financial information in order to demonstrate her inability to pay and the trial court directed the verdict based on Canulli's failure to demonstrate Mary's inability to pay. Many decisions have required the attorney seeking contribution to show the non-client's ability to pay as well as his or her own client's inability to pay. See *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005); *In re Marriage of Selinger*, 351 Ill. App. 3d 611, 622 (2004). In contrast, in *In re Marriage of Haken*, the reviewing court discussed and rejected the necessity of demonstrating an inability to pay in response to the moving party's argument that it was a requirement for a contribution petition. *In re Marriage of Haken*, 394 Ill. App. 3d 155, 161 (2009). The *Haken* court reasoned that section 508(a) was discretionary and based on the factors set forth in sections 503(d) and 504(a). *Haken*, 394 Ill. App. 3d at 161 (citing 750 ILCS 5/503(d), 504(a) (West 2008)). The requirement that a party demonstrate the other party's inability to pay when seeking fees through a contribution petition is not included in those factors. *Haken*, 394 Ill. App. 3d at 161. See also *In re Marriage of Sobieski*, 2013 IL App (2d) 111146, ¶ 47.

¶ 20    We find the analysis offered by *Haken* court persuasive and adopt its rationale. *Haken* incorporates the statutory amendments designed to "level the playing field" in dissolution proceedings. See Gunnar J. Gitlin, *The Revolution That Wasn't: Leveling and Re-leveling the Playing Field-Twelve Years Later,* Gitlin Law Firm (2009), *available at*

http://www.gitlinlawfirm.com/documents/IllinoisAttorneyFeesinFamilyLawCases.pdf and

Gunnar J. Gitlin, *Following the Tortuous Path: Leveling and Re-Leveling the Playing Field-Seventeen Years Later,* Gitlin Law Firm (2014), *available at* http://www.gitlinlawfirm.com/documents/AttorneysFeesinDivorceCasesIllinois1.pdf.

Accordingly, we reject the necessity of proving a spouse's inability to pay as a prerequisite to a contribution award. In determining a fee petition, a trial court should consider the parties' relative financial circumstances as directed by the statutory factors in sections 503(d) and 504(a). We believe this approach is aligned with the statutory goals and better allows attorneys the opportunity to recoup at least a portion of their fees when the client declares bankruptcy, as Mary did.

¶ 21    The dissent suggests that Gregory's obligation to pay Canulli's fees may have been discharged or somehow implicated by his bankruptcy filing. While Gregory sought to discharge any obligation to contribute toward Mary's attorneys fees, that discharge was not allowed by the bankruptcy court. There is simply no bar, either by waiver or bankruptcy, to Canulli seeking contribution from Gregory for his unpaid fees as suggested by the dissent.

¶ 22    Based on this record, which shows that in 2011 Mary's bankruptcy resulted in the discharge of debt for Canulli's fees, we conclude Canulli made a sufficient showing that Mary did not have the ability to pay the balance due on his fees. Therefore, Gregory's financial affidavit was the relevant document for the court to examine under the instant facts. Gregory's financial affidavit was dated March 2011. The trial court cannot determine Gregory's ability to pay Canulli's fees based on his financial circumstances in 2011. Although the trial court did not reach the issue of Gregory's ability to pay, the local rules require that the financial affidavit be contemporaneous with the petition hearing. The trial court can only reach a valid determination

9

of a fee petition when it has current information on which to base its decision. The provisions in the local rules concerning the parties' financial disclosures mandate the parties provide information on their financial circumstances under oath and serve them within three days of the hearing. Compliance with the local rules allows the trial court to make an informed decision on the parties' abilities to pay the outstanding attorney fees.

¶ 23     Similarly, the proper timeframe for disclosure of the parties' financial circumstances to determine a contribution petition is the time of the hearing on the petition, not the date of dissolution as established by the trial court.  See *In re Parentage of Rocca*, 2013 IL App (2d) 121147, ¶ 17 (finding the trial court did not err in denying a contribution petition because there was no evidence of the parties' current financial circumstances).  This timeframe coincides with the local rules. As discussed above, the availability of current financial information is the appropriate means for a trial court to reach an informed decision on the parties' ability or inability to contribute to the other parties' attorney fees.

¶ 24     We find that the trial court's denial of Canulli's petition for contribution was against the manifest weight of the evidence.  As discussed above, the trial court reached its conclusion based on an incorrect timeframe to consider the parties' financial circumstance and without Gregory's current financial information.  Because the trial court found that Canulli did not demonstrate Mary's inability to pay, it did not consider whether Gregory had the ability to pay.  Accordingly, we remand for further hearings on Canulli's petition for contribution consistent with this order.

¶ 25     For the foregoing reasons, the judgment of the circuit court of Will County is reversed and the cause remanded.

¶ 26     Reversed and remanded.
¶ 27     PRESIDING JUSTICE McDADE, dissenting.

10

¶ 28    At issue in this appeal brought by attorney Michael D. Canulli is who, if anyone, is obligated to pay the unpaid balance of the fees he generated in representing the respondent, Mary Anderson, in the dissolution action filed by petitioner, Gregory Anderson. Canulli filed a petition for contribution pursuant to section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(a) (West 2010)) to require Gregory to pay fees that Canulli asserted Mary was unable to pay. Gregory's motion to dismiss the petition was granted by the circuit court of Will County and Canulli appealed.

¶ 29    The majority reverses that decision and remands for further proceedings to consider Gregory's ability to pay—and, presumably, the fairness and reasonableness of Canulli's fees. While I agree that the trial court erred in its designation of the appropriate time period for consideration of the contribution claim, the issue is irrelevant under my analysis. For the reasons that follow, I would not find it necessary to reach the majority's resolution, to remand the case to the trial court or to determine Gregory's ability to pay or the propriety of Canulli's fees. Rather, I would affirm, although on a different basis, the decision of the trial court dismissing Canulli's contribution petition and I, therefore, respectfully dissent from the majority's decision.

¶ 30    Gregory's petition for dissolution of his marriage to Mary was filed on October 21, 2008. At that time, the marriage was of 16 years' duration and the parties had no children. Gregory was the owner of a business, Income Benefits Group, of which he and Mary were the sole shareholders and by which both were employed. The marital estate was in some financial distress. The marital home was in foreclosure, at least one of their cars had been repossessed, and they were carrying a $55,000 debt to the federal Internal Revenue Service. Assets to be distributed included bank accounts, retirement benefits, and a pension plan.

¶ 31    Mary hired Canulli to represent her on October 28—one week after the petition was filed. The terms of the engagement agreement required Mary to pay a $3,500 retainer and an hourly rate of $350.[1] Canulli continued to serve as her counsel until she discharged him in February 2010. He was granted leave to withdraw on March 16, 2010. During that 16½ month period, he generated fees in the amount of $171,234—an average of $10,700 per month. Of that amount, $94,208[2] was paid from marital assets by court order. The remaining balance is $77,026, which Canulli claims is increasing, by way of contractually authorized interest on the unpaid balance, at 9% per month. The dissolution action continued another year after Canulli's withdrawal, during which time Mary was represented and being charged fees by other counsel.

¶ 32    In March 2010, Gregory filed for bankruptcy—an action he asserts was necessitated in part by Canulli's incessant demands for payment. One year later, in March 2011, Canulli filed his petition for contribution from Gregory, who had not been granted a discharge in his bankruptcy.[3] Mary also filed for bankruptcy in early 2011. When her action was completed in August 2011, she had discharged the fees she still owed Canulli.

---

[1] There are six entries for December 31, 2008, three of which are billed at the contractually-agreed hourly rate of $350 and the other three at $359. Although this appears to be a typographical error, the $359 rate is maintained throughout the balance of the itemization of fees.

[2] This amount actually paid to Canulli exceeded the fees generated by Gregory's counsel for work done pre-filing through finalization of the dissolution.

[3] The parties have not briefed the intricacies of bankruptcy law, but it is possible that Gregory's own bankruptcy also impacted his obligation to pay Canulli's fees. See, *e.g.*, *In re Heilman*, 430 B.R. 213, 218 (Bankr. 9th Cir. Apr. 26, 2010) (discussing, *inter alia*, what constitutes a "claim" under federal bankruptcy law); *Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125, 1127 (7th Cir. 2003) (noting that "[a]ttorneys' fees are not among the debts excepted from discharge by [11 U.S.C.] § 523").

¶ 33 Mary and Canulli had entered into a contract for Mary's representation to which Gregory was never a party. He, therefore, never had an independent contractual obligation to pay Canulli's fees. Beyond that fact, in the Marital Settlement Agreement that was fully negotiated by Mary and Gregory with the assistance of counsel for each of them and incorporated into the court's order of dissolution, Mary expressly waived contribution from Gregory for any of Canulli's fees. Thus, Gregory had no legal responsibility for Canulli's fees, and the only way he could be required to pay them is if he is obligated pursuant to section 508(a) to do so.

¶ 34 This conclusion raises two questions: First, as a threshold issue, does Mary's bankruptcy discharge constitute a legal bar to Gregory's possible obligation to contribute to Canulli's fees; and second, if the discharge does not constitute a bar to Canulli's recovery from Gregory, can the statutory requirements for imposing those fees on Gregory be satisfied?

¶ 35 1. Legal Impact of Mary's Bankruptcy Discharge on Canulli's Claim

Against Gregory for Contribution to Mary's Attorney's Fees

¶ 36 The discharge of a debt in bankruptcy does not render that debt a nullity, but it does relieve the debtor from having to pay that debt. *Heilman*, 430 B.R. at 218. A major issue in a contribution action such as this one is whether the client's quashed obligation to pay the discharged debt can be imposed upon the former spouse. For the following reasons, I would conclude that it cannot.

¶ 37 In a bankruptcy proceeding, the discharge of one spouse/obligor of a debt for which both spouses are jointly liable does not relieve the non-discharged spouse of his or her independent obligation to satisfy the debt. *Id.* at 218-19. Similarly, the obligation to pay such a *joint* debt cannot be bargained away by or reimposed on the discharged spouse. See *id.* at 219.

13

¶ 38       We do not, however, deal in the instant case with such a jointly incurred debt.  Mary and Canulli were the only parties to the engagement agreement at issue here.  In addition, Mary expressly affirmed in the marital settlement agreement her sole responsibility for the balance of any and all attorney fees due and owing to Canulli, suggesting her belief that she was able to satisfy her debt.  She also expressly and voluntarily "waived" any contribution from Gregory for payment of Canulli's fees.  The trial court found their settlement agreement to be binding on the parties and incorporated it into the order of dissolution.

¶ 39       Mary's "waiver" highlights the issue that I believe to be at the heart of this case.  The authorization to petition for contribution for unpaid fees is given by section 508(a) of the Act to the attorney holding the debt—in this case, Canulli.  750 ILCS 5/508(a) (West 2010).  Our supreme court has said, "[a]s we view it, however, the *principal purpose* of section 508(a) is to enable a court to *shift liability for attorney fees* from one party to another."  (Emphases added.) *Nottage v. Jeka*, 172 Ill. 2d 386, 395 (1996).  Logically, to carry out this purpose, the spouse on whose behalf contribution is sought must have some liability to shift.  Because of her discharge in bankruptcy, Mary has no obligation to pay Canulli's fees and, consequently, no liability to shift.

¶ 40       This conclusion finds support in the burden placed on the proponent of the petition for contribution to prove, as a threshold requirement, that the debtor herself *cannot* pay the fees without impairing her ability to maintain her lifestyle.  See *In re Marriage of Hasabnis*, 322 Ill. App. 3d 582, 598 (2001) (holding that the party seeking contribution need not be destitute and that "[i]t is sufficient that payment would exhaust the spouse's estate or strip the spouse's means of support or undermine the spouse's economic stability").  This showing would require the existence of an actual present liability that, if the actual debtor were made to pay, could threaten

14

her financial stability. A creditor simply cannot make this showing when the debt has been discharged.

¶ 41 In addition, I am persuaded that the supreme court's statement of the primary purpose of section 508(a) establishes that Mary, as the debtor whose obligation to pay fees is shifted to another, is the intended beneficiary of the statute. If that is correct, no benefit accrues to her unless she is, in fact, legally obligated to pay the debt. Contribution from a party who has no independent obligation to pay should, therefore, not be available to a creditor when the only person contractually responsible for payment of the debt has been discharged from that responsibility. To hold otherwise, under the circumstances of this case, would be to thrust an obligation to satisfy a contractual debt on a stranger to the contract simply because he or she is not a stranger to the party who incurred the debt but has been discharged from any obligation to pay. It is unclear to me why Canulli should escape the loss sustained by every other creditor whose obligor's debt is discharged in bankruptcy simply because the debt to him was incurred in a dissolution action.

¶ 42 I would agree with Gregory and find that Mary's discharge of Canulli's bills in her bankruptcy action is a complete bar to Canulli's claim for contribution. I would affirm, on the basis of the foregoing analysis, the trial court's denial of the petition. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 33 (holding that the appellate court can affirm the trial court's judgment on any basis supported by the record).

¶ 43 2. If Discharge is Not a Bar, Can Canulli Satisfy the Statutory

Contribution Requirements?

¶ 44 Because I would find the discharge to be a complete bar to the contribution claim as a matter of law, I would not ordinarily reach the question of whether Canulli, as the proponent of

15

the petition, can meet his burden of proving all three of the following required criteria: (1) that Mary cannot pay; (2) that Gregory can pay; and (3) that Canulli's fees are fair and reasonable. However, because I question the correctness of the majority's conclusion that the discharge of Mary's debt is legally and practically irrelevant, I offer a brief observation relative to the first prong of Canulli's burden.

¶ 45    There is a significant difference between "unable" to pay and "no longer obligated" to pay. Bankruptcy seeks relief from the crushing weight of *cumulative* debt, and the discharge of allowable obligations does not prove that the discharged debtor could not, if obligated, pay a particular debt. In fact, Mary's waiver indicates her belief that Canulli's fees constituted a debt she actually could pay. Thus, while the discharge may *imply* that Mary cannot pay Canulli's fees, the only certainty resulting from the discharge is that she is legally excused from any requirement that she pay. She has no debt. Even if Canulli is permitted to raise the discharge, it would not, in my opinion, prove that Mary was unable to pay his fees.

¶ 46    As to the second and third prongs, I agree with the majority that, on remand, Gregory should have to provide a current financial affidavit. Finally, the information available in the record and partially set out earlier in this dissent (see *supra* ¶¶ 31-32, 31-32 nn. 1-3) strongly suggests to me that Canulli's fees are not fair and reasonable.

¶ 47    For the foregoing reasons, I respectfully dissent.