2023 IL App (1st) 211319-U

No. 1-21-1319

Order filed March 31, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MICHAEL NITEKMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2017 L 2557 |
| | ) | |
| FIFIELD CONSTRUCTION AND REALTY, | ) | Honorable |
| LLC, and CHRISTOPHER FIFIELD, | ) | Margaret A. Brennan, |
| | ) | Judge presiding. |
| Defendants-Appellants. | ) | |

JUSTICE MITCHELL delivered the judgment of the court.
Presiding Justice Delort and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We reverse the trial court's award of damages and remand with directions to reduce the compensatory damages on the breach of contract claim and to vacate the judgment on the consumer fraud claim, including the award of punitive damages and attorney fees.

¶ 2     Defendants Fifield Construction and Realty, LLC and Christopher Fifield appeal the trial court's judgment order awarding plaintiff Michael Nitekman $334,551.38 after a bench trial in this home remodeling case. Fifield raises two issues: (1) is the trial court's award of $133,750.53 in compensatory damages against the manifest weight of the evidence; and (2) did the trial court err in finding a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act because

that claim was duplicative of the breach of contract? For the following reasons, we reverse and remand with directions.

¶ 3                                    BACKGROUND

¶ 4     Plaintiff Michael Nitekman, along with his wife, Phoebe Nitekman, made plans to build a third-floor addition to their two-story house and a "breezeway" connecting the house to a detached garage. After months of discussions, Christopher Fifield—the sole member, manager, and employee of Fifield Construction and Realty, LLC—entered into an agreement with the Nitekmans to complete the construction for $344,285. During the time that Fifield worked on the project, the Nitekmans submitted periodic payments to Fifield and, at times, paid Fifield's subcontractors directly at Fifield's direction.

¶ 5     During the construction, the Nitekmans discovered water leaking into their bedrooms. The leak continued for several weeks without much reprieve. After a lengthy dispute over the leak and other defects with the construction, Fifield emailed Nitekman announcing that he was walking away from the project. By this time, the Nitekmans had paid $97,622.12 to Fifield directly and $84,823.86 to various subcontractors and material suppliers. Subsequently, the Nitekmans hired two replacement contractors: Wickright, to complete the breezeway portion of the project, and NewLook Construction LLC, for an "emergency" repair of the water leak and masonry defects with the third-floor addition and other work.

¶ 6     Nitekman filed a lawsuit against Fifield alleging breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)), among other claims. After bench trial, the trial court entered judgment in favor of Nitekman on both the breach of contract and the Consumer Fraud Act claims, awarding $334,551.38. The

award consisted of $133,750.53 in compensatory damages for the breach of contract claim, $50,000 in punitive damages for the Consumer Fraud Act violation, and $150,800.85 in attorney fees under the Consumer Fraud Act. The trial court denied Nitekman's motion to reconsider and Fifield's motion to vacate the judgment. Fifield timely appealed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 7                                          ANALYSIS

¶ 8                              A. Breach of Contract Damages

¶ 9     Fifield argues that the trial court's award of $133,750.53 in compensatory damages is against the manifest weight of the evidence because the trial court did not offset the award by the amount unpaid on the original $344,285 contract, thus resulting in a windfall for Nitekman. The issue of damages is a question of fact, and a trial court's finding on damages will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Fieldcrest Builders. Inc. v. Antonucci*, 311 Ill. App. 3d 597, 607 (1999). A damages award is against the manifest weight of the evidence only where it is apparent that the trial court ignored the evidence or that its measure of damages was erroneous as a matter of law. *Id.*

¶ 10    In the context of a construction contract, when a builder has provided less than full performance or has provided defective performance, the measure of damages is "the cost of repairing the defects and/or completing the project." *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 137 (2008); *Meyers v. Woods*, 374 Ill. App. 3d 440, 453-54 (2007). The general rule in contract actions is that damages should place the injured party in the position he would have been had the contract been performed, but not in a better position. *Walker v. Ridgeview Construction Co., Inc.*, 316 Ill. App. 3d 592, 596 (2000). Thus, predicated on this general rule, the proper

calculation of damages is the cost of repair or the cost of completion minus the original contract price. *Castricone v. Michaud*, 223 Ill. App. 3d 138, 140 (1991) (quoting *Ross v. Danter Associates, Inc.*, 102 Ill. App. 2d 354, 370 (1968)) ("the measure of damages in this type of case is the 'difference between the cost of constructing, by contract, the building the contractor agreed to put up, and the fair cost market price of erecting such building'").

¶ 11    *Castricone* is illustrative of this "contract price limitation" rule, which applies squarely to "cases in which the purchaser's damages are measured using the cost of completion/repairs standard". 223 Ill. App. 3d at 141-42. In *Castricone*, the trial court awarded the homeowners the entire cost incurred in completing and repairing the house: $27,407.88. *Id.* at 139. The appellate court subsequently reduced this award, applying the rule that "the total cost of completing the home must be netted against the original contract price." *Id.* at 141. Because the homeowners contracted for an $89,000 project, their damages were the amount in excess of the $89,000 contract price, not the entire amount they expended in completing and repairing the home. *Id.* at 142.

¶ 12    Here, Fifield contends that Nitekman has paid a total of $363,894.98 for the construction project, including the costs to repair defects and to complete the work after Fifield's breach. Because Nitekman had contracted for a $344,285 project[1], the damages he is entitled to would be the amount in excess of $344,285, which Fifield argues is $19,609.98 ($363,894.98 – $344,285). This sum of $363,894.98 is, however, not inclusive of all costs Nitekman expended in connection with this construction project. Fifield breaks down the sum into $182,446.98 (payments Nitekman

---

[1] Nitekman disputes the actual contract price. However, the trial court found that "a valid and enforceable oral agreement existed" between the parties for the project price of $344,285, and this finding was not challenged on appeal.

made to Fifield and subcontractors); $96,000 (cost of completion of the breezeway); and $85,449 (various costs of repair that the trial court awarded).

¶ 13    At trial, Nitekman introduced evidence and testimony that he incurred an additional $75,340 in costs of completion and repair: $66,507 to tear down and rebuild the defective masonry for the third-floor addition, $2,145 to repair a tripping breaker, and $6,688 to repair window hardware. The trial court did not include these items in the award because Nitekman "did receive some benefit of his bargain in that the third-floor addition was substantially constructed *despite being defective*." What Nitekman really bargained for was the third-floor addition and the breezeway to be completed in *a workmanlike manner* for $344,285. Because of Fifield's defective workmanship, Nitekman incurred costs to complete not only the breezeway but also the third-floor addition. It logically flows that if the cost of completion for the breezeway is awarded, so should the cost of completion for the third-floor addition.[2]  See *Castricone*, 223 Ill. App. 3d at 139 (taking into account the entire cost incurred in completing and repairing the house in the damages calculation).

¶ 14    The entire cost Nitekman incurred in repairing and completing his home thus amounts to a total of $439,234.98. Because Nitekman would only be entitled to what he paid beyond the $344,285 contract price, his actual damages are $94,949.98 ($439,234.98 – $344,285). Accordingly, the trial court's award of $133,750.53 in compensatory damages is against the manifest weight of the evidence.

---

[2] Nitekman argues that the $66,507 cost does not include the cost to re-roof the third floor and replace the drywall. There is no evidence in the record that quantifies this purported additional cost, and Nitekman does not argue that he has incurred this cost.

¶ 15    Nitekman argues that this "contract price limitation" rule is not applicable here because the damages awarded to him are consequential damages and reimbursement based on reliance interest, not direct damages. Consequential damages are "losses or injuries that do not flow directly and immediately from a party's wrongful act but rather result indirectly from the act." *Westlake Financial Group, Inc. v. CDH-Delnor Health System*, 2015 IL App (2d) 140589, ¶ 31 (general damages are those that naturally flow from a breach of contract while consequential damages are not the invariable result of the breach) (citing 24 Richard A. Lord, Williston on Contracts § 64.12 (4th ed. 2014)). Here, the items included in the trial court's award are costs of completion and repair that arose directly and naturally from Fifield's breach of contract by failing to complete the project and failing to construct in a workmanlike manner. Significantly, the trial court never purported to award consequential damages. They are direct compensatory damages following Fifield's breach.

¶ 16                          B. Violation of the Consumer Fraud Act

¶ 17    Fifield argues that the trial court's conclusion that Fifield violated the Consumer Fraud Act was against the manifest weight of the evidence because the consumer fraud claim is not distinct from the breach of contract. To succeed in a private cause of action under the Consumer Fraud Act, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage of the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 190-91 (2005). A trial court's conclusion as to whether these elements have been proven in any case is reviewed under the manifest weight of the evidence standard. *Id.* at 191. However, we review *de*

*novo* whether a particular conduct constitutes an unfair or deceptive act. *Id.* at 179; *Pack v. Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 114.

¶ 18    When a plaintiff's breach of contract and consumer fraud counts rely on the same facts, the consumer fraud claim is "merely a breach of contract count clothed as a [consumer fraud count]." *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 704 (2005); *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000) ("Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action."). Here, Fifield argues that the trial court found both the breach of contract and the violation of the Consumer Fraud Act on the same basis: that Fifield overstated the amounts that Nitekman owed on the invoices for the completed work. However, a breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. *Avery*, 216 Ill. 2d at 169; *Zankle*, 311 Ill. App. 3d at 312 ("'a deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it"). Whether Fifield overstated the amounts on the invoice or whether he charged Nitekman in advance for the uncompleted work is a matter of the payment terms in the contract. That Fifield overstated the invoice amounts is a simple failure to abide by the contractual payment terms, not a consumer fraud.

¶ 19    Nitekman in turn points to other representations by Fifield that could serve as a basis for the finding of a deceptive act. First, when the water leak issue was ongoing, Fifield stated to Nitekman that his roofing work would "end water issues forever." Again, a deceptive act or practice involves something more than the mere fact that Fifield promised something—to fix the water issues—and then failed to do it. See *Zankle*, 311 Ill. App. 3d at 312. Further, "puffing,"

which denotes exaggerations as to the degree of quality of his product or service, cannot form a basis for a consumer fraud claim. *Avery*, 216 Ill. 2d at 173; see also, *e.g.*, *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App. 3d 810, 823 (1993) (statements that the home would be "perfect" and built with "expert workmanship" and "custom quality" were reasonably construed as "puffing"). Fifield's statement that his work would "end water issues forever" is a description relating to the quality of his work, and such a statement is of the type of nonactionable "subjective characterizations." *Avery*, 216 Ill. 2d at 174.

¶ 20    Second, Nitekman maintains that Fifield made misrepresentations regarding the project accounting in an email to Nitekman after issuing a series of invoices. Fifield had told Nitekman that he was about $30,000 out of pocket in paying subcontractors and vendors, when, in fact, there should have been a positive balance of approximately $23,000. To the extent that this accounting does not comport with the parties' agreement, it is a matter concerning the payment terms of the parties' contract. Any damages to Nitekman that arose from the inaccurate accounting was remedied by the compensatory damages award under the breach of contract claim. The Consumer Fraud Act was not intended to supplement every breach of contract claim with "a redundant remedy." *Zankle*, 311 Ill. App. 3d at 312. Because there is no actionable conduct to sustain the finding of the violation of the Consumer Fraud Act, the trial court's judgment in favor of Nitekman on the consumer fraud claim is reversed. In light of this conclusion, the punitive damages of $50,000 and attorney fees of $150,800.85 awarded under the consumer fraud claim are vacated.

¶ 21                                CONCLUSION

¶ 22    The judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions to reduce the damages award consistent with this order and to vacate the award of punitive damages and attorney fees under the Consumer Fraud Act.

¶ 23    Reversed and remanded with directions.